**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.: _____

AMERICAN MUCKRAKERS PAC, INC., a foreign entity, and DAVID B. WHEELER, an
individual, North Carolina resident;
Plaintiffs

v.

LAUREN OPAL BOEBERT, an individual and Colorado resident, and JOHN DOES (1-25);
Defendants.

_____

**COMPLAINT**
_____

COME NOW PLAINTIFF DAVID B. WHEELER an individual and AMERICAN
MUCKRAKERS PAC, INC. a North Carolina nonprofit corporation (collectively "Plaintiffs") to
respectfully submit their Complaint for legal claims against DEFENDANT LAUREN OPAL
BOEBERT ("Boebert") and JOHN DOES (1-25) to be named later, in defaming Plaintiffs and
intentionally damaging their economic, reputational, and First Amendment interests in excess of
the jurisdictional limit of this Court, pursuant to 28 U.S.C. § 1332. In support of their claims and
prayer, Plaintiffs allege and argue as follows:

**SUMMARY OF CLAIMS**

This matter was filed in the State of North Carolina, County of Mitchell, General Court of
Justice, Superior Court Division Case No. 22CVS161, and was dismissed for refiling in Colorado
by that Court; the record and proceedings in that case are incorporated herein by this reference.

1

Defendant Boebert maliciously defamed Plaintiffs in appearances on the right-wing media circuit including the "Hannity" cable-television program and radio-broadcast -- notable for its reach of millions of viewers – and other programs and publishers through which Defendant made similar maliciously false statements to defame Plaintiffs with accusations of criminal and tortious acts and attacking their integrity so as to harm their capacity to perform their profession of reporting on candidates seeking re-election.

When faced with Plaintiffs' well-corroborated scoops, reporting that Congresswoman Boebert served as a paid escort, had twice aborted pregnancies and had used illegal drugs including methamphetamine, Defendant went on the offensive by threatening litigation and making the news-story about Plaintiffs' character, funding, and alleged mendacity. Defendant's threats of litigation constitute an intentional attempt to undermine Plaintiffs' exercise of their "constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." C.R.S. § 13-20-1101(1)(b). These threats of litigation and knowingly false statements impugning Plaintiffs' integrity and disparaging their character as incompatible with their profession as political reporters, opens Defendant to liability for Plaintiffs' claims of defamation, trade libel, tortious interference with contract and intentional interference with prospective business advantage, as well as sanction pursuant Colorado's recently enacted statute C.R.S. § 13-20-1101.

Plaintiffs seek economic, non-economic and exemplary damages, disgorgement of all monies Defendant Boebert gained as a result of her defamations of and the threat of litigation against Plaintiffs, which she and her associates boasted would be "the easiest of litigations," "a slam dunk," as well as injunctive relief mandating removal, retraction and/or correction of publications determined by this Court to be defamatory.

2

## CERTIFICATION OF GOOD FAITH PURSUANT C.R.S. § 13-17-201

Colorado's recently enacted statute C.R.S. § 13-20-1101, explicitly provides that it is meant to protect citizens' First Amendment rights to public participation in government:

(a) The general assembly finds and declares that it is in the public interest to encourage continued participation in matters of public significance and that this participation should not be chilled through abuse of the judicial process.

(b) The general assembly finds that the purpose of this part 11 is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.

C.R.S. § 13-20-1101(1).

This case is filed in part to extend existing precedent establishing the meaning of Colorado's law so that it provides the protection intended by our legislators in enacting the statute for the protection of citizens' rights as plaintiffs as well as defendants. When, as in the matter herein, the rights to participate in matters of public concern are reciprocal, the question of who took the step first of bringing the dispute before the Court, should be understood as irrelevant to the protections meant to be provided by this statute.

## PARTIES

1.      LAUREN OPAL BOEBERT ("Boebert") is the United States Representative for Colorado's third (3rd) Congressional District.

2.      DAVID B. WHEELER is a resident and citizen of the state of North Carolina.

3.      AMERICAN MUCKRAKERS, PAC, INC. is a North Carolina non-profit corporation and a Federal Elections Commission registered Political Action Committee.

## JURISDICTION AND VENUE

4.      Plaintiffs are North Carolina residents.

5.      Defendant Boebert is a resident of Colorado.

6.      Federal Court is the proper venue as the Plaintiffs are North Carolina residents and 28 U.S.C. § 1332 provides for diversity jurisdiction in a case such as this, given the amount in controversy; in addition, Defendant Boebert argued successfully in her motion to dismiss in the Superior Court of North Carolina, Case No. 22CVS161, that Colorado was the proper venue for Plaintiffs' Complaint. *See* "Order Granting and Denying Motions and Dismissing Complaint Without Prejudice" attached hereto as **Exhibit A**, p.135, ¶ 4 ("The proper State of venue is the State of Colorado.")

## FACTS

7.      On June 16, 2022, Defendant Boebert appeared on "The Sean Hannity Show" and made defamatory statements, endorsed without rebuttal, the gist of which was to impugn the integrity and reputation of Plaintiffs. *See* **Exhibit B.**

8.      Defendant Boebert accused Plaintiffs of knowingly publishing false statements that she had two abortions.

9.      Defendant Boebert accused Plaintiffs of knowingly publishing false statements that she had worked as a paid escort.

10.      Defendant Boebert accused Plaintiffs of knowingly publishing false statements that she had used illegal drugs including methamphetamine.

11.      Defendant Boebert was aware of the sources used by Plaintiffs to corroborate their publication.

4

12.     Defendant Boebert was aware that Plaintiffs were publishing their sources' reports that she had had two abortions, rather than making statements based on their own first-hand knowledge.

13.     Defendant Boebert was aware that Plaintiffs were publishing their sources' reports that she had worked as a paid escort, rather than making statements based on their own first-hand knowledge.

14.     Defendant Boebert was aware that Plaintiffs were publishing their sources' reports that she had used illegal drugs, rather than making statements based on their own first-hand knowledge.

15.     On information and belief, Plaintiffs allege that Defendant Boebert was aware that she had aborted two pregnancies when she falsely accused Plaintiffs of lying.

16.     On information and belief, Plaintiffs allege that Defendant Boebert was aware that she had worked as a paid escort when she falsely accused Plaintiffs of lying.

17.     On information and belief, Plaintiffs allege that Defendant Boebert was aware that she had used illegal drugs when she falsely accused Plaintiffs of lying.

18.     Nevertheless, despite knowing her statements to be false, Defendant went on the "The Sean Hannity Show" on June 16, 2023, and made the following statements impugning the integrity and professional reputation of Plaintiffs:

    a.  "There is no evidence to back any of their claims. I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit."

b.  "This man was told by his source that one of his allegations was made-up before he released it.  He knew it was false and he moved forward anyway…. And he changed his story later."

c.  "Radical Democrats want me out of office, and they will lie and break the law to try to beat me."

19.     Defendant Boebert admitted during that broadcast that her motive was to thwart Plaintiffs' first amendment rights to public participation in matters of public concern, stating, "We're going to make sure this political hack never has the opportunity to do this to anyone else again."

20.     Before she published the above quoted statements and participated in the campaign to maliciously defame Plaintiffs in order to thwart Plaintiffs' ability to continue their participation in opposing her reelection, Defendant Boebert had knowledge of the fact that Plaintiffs were reporting corroborated allegations.

21.     The mission of Plaintiff American Muckrakers is to provide accurate information about political candidates, their policies, and their character to enable voters to make informed decisions when they cast their votes. The guiding mission of the organization is to provide reporting of facts uncovered by the PAC for the purpose of vetting candidates by providing accurate information to voters.

22.     Plaintiff American Muckrakers is a North Carolina non-profit started in May of 2021; it is solely funded by donations.

23.     Plaintiff Wheeler, President of American Muckrakers, Inc., chose to register the organization as a "527 Super PAC" with the FEC in order to provide full transparency on governance, donor names, donation amounts, and how the donor contributions are spent.

24.     The organization is, and at all times has been, in good standing with FEC, consistently making timely reports by professional compliance consultants, as required by law, to ensure transparency as to its operations.

25.     Plaintiff American Muckrakers prides itself on being cautious and thorough in its researching and vetting the accuracy of information it receives, ensures its sources' statements are supported in evidence before it publishes reports, makes public the underlying sources for its publications when authorized to do so to maximize transparency, has an attorney review its operations to ensure legal compliance and an accredited accounting firm to manage its financial matters.

26.     Starting mid-June 2022, Defendant Boebert publicly, repeatedly and maliciously defamed Plaintiffs by impugning them in each of these professional categories: their accuracy, transparency, legality and financial propriety.

27.     In May of 2022, Plaintiffs were contacted by telephone, email, and Twitter messages by a number of individuals throughout the United States claiming first-hand knowledge of information that exposes Defendant's hypocrisy and that would tend to persuade voters to oppose the reelection of Defendant Boebert in her bid for U.S. Congress for the 3rd District of Colorado.

28.     Plaintiff Wheeler was provided numerous verbal statements on recorded and unrecorded phone conversations, and was provided numerous written statements, from multiple individuals claiming to have first-hand knowledge of Defendant Boebert's two previously undisclosed abortions, her previously undisclosed work as a paid escort, and previously undisclosed illegal drug use.  *See* **Exhibits D6, D7, D8, D9 - D22, D31-D33, Q1 and Q2.**

29.     Plaintiffs researched Defendant's background, previous election campaigns, the issues she championed and her speeches. Based on this investigation, American Muckrakers, at 3:51 p.m. Eastern Time, on June 13 , 2022, posted on its website, FireBoebert.com, a press release ("Abortion and Paid Escort Press Release") reporting alleged actions by Defendant which are direct contradictions of what Defendant had represented to the public regarding her policy positions and personal beliefs, including that she had two abortions (despite her public campaign against abortion) and that Defendant worked as an unregistered paid escort (despite voting against proposed protections for consensual sex workers). *See* **Exhibits C1, C2, C3 and C4.**

30.     The reporting about Defendant published in the Abortion and Paid Escort Press Release was based upon information provided to Plaintiffs by numerous individuals, including, but not limited to:

a.      Ms. Cindy Lee O'Brien, of New Castle, Colorado, beginning on May 27, 2022, through July 27, 2022, through fifty or more recorded phone calls, emails, text messages, private Twitter messages and in-person meetings, during which Ms. O'Brien provided details of Defendant's abortions in Grand Junction, Colorado and in Glenwood Springs, Colorado. *See*, **Exhibits D1-6.**

b.       Ms. Cindy Lee O'Brien, also provided first-hand reports of Defendant's paid escort work for one of the Koch brothers at an Aspen Colorado political event at the home of Mr. Leslie Wexner on or about February 2020. *See*, **Exhibits D1-6.**

c.      Ms. Cindy Lee O'Brien, also claimed first-hand knowledge of Defendant's nude dancing at an establishment named "Fantasy Grand Junction," in Grand Junction, Colorado. *See*, **Exhibits D1-6**

    d.     Ms. Judy Biedenbach, currently residing in Rochester, New York, through dozens of Twitter messages and emails from May 19, 2022, through November 5, 2022, corroborated Cindy Lee O'Brien's claims and provided additional information regarding Defendant's alleged abortions and paid escort work. *See,* **Exhibit E**.

    e.     Ms. Jessica Spaulding, of Rifle, Colorado, who had worked for Boebert at Shooters Grill in Rife, Colorado, provided written and verbal statements through recorded phone calls, emails, text messages, private Twitter messages and an in-person meeting on June 19, 2022, claiming first-hand knowledge of methamphetamine use by Defendant Boebert and her husband. *See,* **Exhibits F1-F3**

    f.     Mr. Joshua Bartlett, of Glenwood Springs, Colorado, who has had a ten-plus year relationship with Defendant and her husband, confirmed through text messages and a recorded phone call, on June 16, 2022, the truth of statements made in Plaintiffs' above-mentioned press release and claimed first-hand knowledge of an incident at Defendant's home where he witnessed Defendant using methamphetamine. *See,* **Exhibit G.**

30.    Plaintiffs retained copies of communications and records of phone calls with each and all of the above-mentioned sources and published much of this raw source-material on Plaintiffs' websites "FireBoebert.com" and "AmericanMuckrakers.com".

31.    Plaintiffs never published information that Plaintiffs were told was false by its sources. This claim by Defendant is an intentional manipulation of a sarcastic comment made by one of Plaintiffs' sources who stated, "Yeah, I made it all up."

32.     Defendant maliciously defamed Plaintiffs when she made the knowingly false statement that Plaintiffs' source admitted that she had made up her claims about Boebert.

33.     "The Sean Hannity Show" claims publicly to be the number one listened to radio show in the United States with an average of fifteen million (15,000,000) listeners every week.

34.     During the "The Sean Hannity Show" on live radio on June 16, 2022, Defendant made the following knowingly false and defamatory statements live on the air to Mr. Hannity and his listeners, including the following:

1.  "There is no evidence to back any of their claims. I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit."

2.  "This man was told by his source that one of his allegations was made-up before he released it.  He knew it was false and he moved forward anyway . . . . And he changed his story later."

3.  "We're going to make sure this political hack never has the opportunity to do this to anyone else again."

4.  "Radical Democrats want me out of office, and they will lie and break the law to try to beat me."

*See,* **Exhibit B.**

35.     On June 16, 2022, "Hannity" replayed or discussed on national TV excerpts of Defendant's "The Sean Hannity Show" radio interview above, reiterating Defendant's malicious and false assertions that Plaintiffs knew the statements about Defendant were false and published them anyway.  *See*, **Exhibit H.**

36.     The Fox News television show, "Hannity," is carried on the Fox News TV network every weeknight at 9:00 PM and averages 3.1 million viewers a night.

37.     Plaintiffs answered numerous questions that a "Hannity" show producer, Dante Mazza, had emailed to Plaintiffs. *See*, **Exhibits I1-I6.**

38.     Plaintiffs made numerous requests to Mazza to appear on the show to refute Defendant's false statements. *See,* **Exhibits I1-I6.**

39.     Mazza, however, refused to allow Plaintiff Wheeler to appear on the show to provide Plaintiffs' side of the story and publicly refute Defendant's false and defamatory statements. *See,* **Exhibits I1-I6**

40.     The "Hannity" show on Fox News, on June 16, 2022, and other times on YouTube.com repeated Defendant's defamatory statements made on June 16, 2022, on "The Sean Hannity Show" radio broadcast and the replayed excerpts during the broadcast on TV on Fox News stations, and FoxNews.com.

41.     In a press statement authorized and released by Defendant to the Washington Examiner, Washington Times, Fox News, Daily Caller, and other media organizations on June 15, 2022, and other dates, Defendant made the following defamatory statements:

a.  "This group's vile conduct demonstrates why people are fed up with politics;"

b.  "This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated;" and

c.  "The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties."

    *See,* **Exhibits J1, J4, J5 and J6.**

42.     On June 15, 2022, Defendant stated to Mr. Andrew Kerr, an investigative reporter at the Washington Examiner:

a.  "This is completely baseless, and these allegations are completely false. For them to go after me in this manner is absolutely sexist and disgusting, and this is what

people hate about politics. They hate the lies and they hate the personal destruction. This is very damaging, and that is why I'm going after this guy personally and his group with the full force of the law. I am not holding back, and I want to make sure that this never happens to anyone else again." *See,* **Exhibit J1.**

43.     Mr. Andrew Kerr, investigative reporter at the Washington Examiner, and Ms. Valerie Richardson, both emailed and phoned Plaintiff Wheeler seeking comment.

44.     Plaintiff Wheeler responded to Mr. Kerr and Ms. Richardson's questions via the same email, explaining that he had sources with first-hand knowledge of the allegations against Defendant. *See*, **Exhibits J2 and J3**.

45.     A Lexis/Nexis search made on August 22, 2022 (covering the time period of June 15, 2022, to July 25, 2022) revealed more than 42 unique news articles written and posted across the United States in which the Defendant repeatedly claimed she was going to sue the Plaintiffs for defamation and refer Plaintiff Wheeler for criminal prosecution, based on Defendant's claims that Plaintiffs deliberately lied about her. *See,* **Exhibit T.**

46.     On June 22, 2022, Defendant appeared on the "Tomi Lahren is Fearless" TV entertainment show and said the following:

> "Right, Tomi. These are all lies and isn't it interesting that this is coming from the party of believe all women? I'm not the only one this has happened to. We know they have lied about you as you have stated.  They lied about Sarah Palin and nearly every conservative fighter.  Heck, even Mother Jones, a far-left leaning publication called these sexist and disgusting claims. I've never had two abortions. I've never been an escort. I've never been a drug addict as they claim or stripper or whatever else they want to add to that and over the next few days verifiable facts will be released that proves what I said that proves that these uh allegations are absolutely false. But here's what's so sad Tomi. The damage has been done.  These allegations trended number one on Twitter. **When Mr. Wheeler and this PAC released some of their allegations they knew them to be false.  Their source told them in a text, and I quote, this story is made up**. When they said I was some woman in

lingerie in a bed that photo was proven not to be me and these sick hacks still continue to publish the photo and double down saying that it was me so I'm not taking this quietly and won't allow this illegal behavior to continue to happen against myself and I certainly never want to anyone else and that's why I'm moving forward with a lawsuit to sue this PAC. They lied about me and they knew it was lies and that is absolutely illegal, it's like a bully on a playground uh when they can't win they punch you in the face but uh I'm fighting back."

*See*, **Exhibit K** (emphasis added).

47.     Following Defendant's knowingly false statements on numerous radio and television news shows, Plaintiffs received numerous emails, text message, verbal death threats, and disgusting comments proclaiming support for Defendant. *See,* **Exhibits L1-L3**.

48.     Plaintiffs reported that Defendant used methamphetamine based upon numerous recorded phone conversations with the sources claiming first-hand knowledge including Ms. Jessica Spaulding, a former employee and friend of Defendant from Rifle, Colorado, and Mr. Joshua Bartlett, a former friend of Jayson Boebert from Glenwood Springs, Colorado. *See,* **Exhibits F1-F3 and G**.

49.     Plaintiffs reported that Defendant was an unregistered paid escort based upon extensive information received through sources who provided first-hand knowledge of the matter through phone calls and in-person meetings.

50.     Contrary to Defendant's claims quoted above, once Plaintiffs were made aware that the picture of "woman in lingerie in a bed" was mistakenly presented as Defendant, Plaintiffs immediately removed the photo in their amended Press Release on their website; this was confirmed by Anna Lynn Winfrey, a reporter for The Pueblo Chieftain in an article published on June 17, 2022, titled, "Rep. Lauren Boebert wants to sue American Muckrakers. They say they're prepared to fight back."

51.     In her article, Ms. Winfrey reported that "American Muckrakers revised their report and deleted that photo after questions surfaced." *See,* **Exhibit M.**

52.     Contrary to Defendant's false claim quoted above, Plaintiffs did not "double down" but chose to delete the photo, then amend and re-post their Abortion and Paid Escort Press Release.

53.     Plaintiffs have retained all the sources communication and phone recordings outlined above and much of those are on the Plaintiff American Muckrakers' websites: AmericanMuckrakers.com and FireBoebert.com.

54.     Some of Plaintiffs' reporting was based upon text and phone conversations with Ms. Tori Hooper, recordings of which were made available on Plaintiffs' website. *See,* **Exhibit N1**. During Wheeler's text conversation with Ms. Hooper, she flippantly and sarcastically made the statement that her account of the facts was "totally made up". *See,* **Exhibit N2.**  This was clearly a sarcastic joke, as Ms. Hooper at other points in the conversation emphatically attested to the truth of her statements.

55.     On June 10, 2022, Plaintiffs posted a press release including Ms. Hooper's recorded conversation. *See,* **Exhibit N3**.

56.     Defendant Boebert seized on Ms. Hooper's sarcastic remark that her account was "totally made up" to intentionally deceive her audience on Hannity and other right-wing outlets. Defendant maliciously mislead her audience and defamed Plaintiffs by claiming that she obtained "internal PAC text messages and emails" demonstrating "this political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated. The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties." And that,

"we have irrefutable evidence that each one of these statements is patently false." *See*, **Exhibit J6.**

57.     Defendant never had any "internal PAC text message and emails" supporting her McCarthyite claim of "irrefutable evidence" of criminality.

58.     Yet, Defendant maliciously and repeatedly issued the knowingly false claim that "over the [next] few days verifiable facts will be released that proves what I said, that proves that these allegations are absolutely false".  *See* June 22, 2022, the Tomi Lahern Show.

59.     In a Newsweek article of June 23, 2022, titled, "Lauren Boebert Says 'Facts Will Be Released' To Disprove 'Sexist' Rumors," reporter Ewan Palmer writes:

> Colorado Rep. Lauren Boebert has said information will soon be released which will disprove the "absolutely false" allegations that she previously worked as an escort and had two abortions.

*See,* **Exhibit J7**.

60.     On June 15, 2022, on FoxNews.com, Defendant stated the following to reporter Mr. Houston Keene:

> Partisan organizations putting out blatantly false and disgusting accusations won't stop me from advancing freedom and conservative values, this group's vile conduct demonstrates why people are fed up with politics. I am not going to stand by and pretend this is normal behavior. This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated. The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties. Attached is a letter from my attorney introducing our response to these lies.

*See*, **Exhibit J6.**

61.     Defendant, as a diversion from the evidence presented by Plaintiffs in support of their reporting, maliciously and repeatedly defamed them in various publications: in The Hill on June 15, 2022, in The Grand Junction Sentinel on June 20, 2022,  in The Washington Examiner

on June 15, 2022, on The Sean Hannity Show on June 15, 2022, in The Washington Times on June 14, 2022, on the Tomi Lahren Show on June 22, 2022, in a report on Foxnews.com on June 15, 2022, and on Colorado Public Radio on June 17, 2022, Defendant Boebert purposely misrepresented the "totally made-up" comment by Ms. Hooper to defame Plaintiffs. Over and over again she repeated, "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false.  Their source told them in a text, and I quote, this story is made up." *See,* **Exhibits B, J1, J4, J6, K, R5, R6, R7**.

62.     To date, despite Defendant's repeated McCarthyite promises that she will soon be able to release concrete evidence of Plaintiffs' criminality, Defendant has not released any such evidence. Her accusations against Plaintiffs are a malicious defamation intended to impugn Plaintiffs' integrity and hence their ability to conduct their profession and participation in the democratic process of self-government.

63.     In fact, Defendant's defamations have been effective in undermining Plaintiffs' capacity to conduct their profession and participate in government—their donations have been reduced significantly as a result of Defendant's campaign against them. The following is a list of total donations made to American Muckrakers, Inc. from the last half of 2022 and beginning of 2023:

| | |
|---|---|
| May 2022 | $ 20,931 |
| June 2022 | $ 27,372 |
| July 2022 | $ 5,754 |
| Aug 2022 | $ 4,654 |
| Sept 2022 | $ 4,420 |
| Oct 2022 | $ 4,116 |
| Nov 2022 | $ 4,647 |
| Dec 2022 | $ 549 |
| Jan 2023 | $ 476 |
| Feb 2023 | $ 2,026 |

64.     Plaintiff American Muckrakers' revenue decreased significantly immediately after Defendant made statements about the Plaintiffs to the news media and on radio and television news and entertainment programs in North Carolina and across the United States and is estimated as of May 2023 to total **$157,519** in yearly lost revenue.

65.     Defendant's false accusations against Plaintiffs subjected them to adverse publicity locally, nationally, and internationally, as various media reported the Defendant's false statements about Plaintiffs.  *See*, **Exhibit T.**

66.     This embarrassment and harm to Plaintiffs' reputations was exacerbated because Defendant was able to privately coordinate with several large media organizations to publish her statements and have her on their radio or television shows without any opportunity for the Plaintiffs to tell their side of the story. *See,* **Exhibits I1-I5.**

67.     Plaintiffs made numerous requests to appear on the various radio and TV shows where Defendant Boebert spoke against him, but to no avail.

68.     Defendant used a tactic when on these radio and TV shows of not only threatening Plaintiffs with suit but of publicly threatening with suit anyone who may donate to Plaintiff.

69.     Defendant made the following statement, through her attorney, to the news media on June 17, 2022:

> Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation.

*See*, **Exhibit J6.**

70.      Defendant used this tactic knowing full-well that she had no basis in law for such threats of suit against potential donors to American Muckrakers. Defendant's statements regarding her intent to bring suit not only against Plaintiffs but against their donors was designed to threaten,

intimidate, and defame Plaintiffs' donors and was in fact successful in silencing them and dissuading them from participating in self-government and exercising their First Amendment rights.

71.     Defendant misused her position as a public figure to threaten Plaintiffs' donors in hopes that their fear of a lawsuit (regardless of whether it lacked any merit whatsoever) and would dissuade them from supporting Plaintiffs. This tactic worked.

72.     Preventing the use of such tactics is the reason why our Colorado legislators enacted C.R.S. § 13-20-1101.

73.     Defendant's efforts were deliberate, malicious, and intended to harm Plaintiffs, and her efforts were successful.

74.     Plaintiff American Muckrakers suffered a ninety-two percent (92%) decrease in revenue after Defendant's false comments about Plaintiffs.

75.     From the start of the Plaintiff American Muckrakers in June 2021, through September 30, 2022, the PAC raised a total of $245.045.63 from 4,270 donors across the United States.

76.     The donations averaged $31.84 per donor and an average sum of $15,315.35 per month.

77.     In the three months prior to Defendant's false comments about the Plaintiffs, from April 1, 2022, until June 30, 2022, the PAC recorded a total of $61,131.36 in revenue from donors all across the United States, which is an average of $20,387.12 per month.

78.     As a result of Defendant's malicious defamations against Plaintiffs, from July 1, 2002, through September 30, 2022, the PAC recorded a total of $3,843.07 in revenue from

donors all across the United States, which is an average of $1,281.00 per month – that constitutes a ninety-two percent (92%) decrease in revenue.

79.     Soon after Defendant broadcast her intent to sue American Muckraker donors on radio, television and on-line publications, donors to emailed to cancel their donations to Plaintiffs, come citing their fear of liability.

80.     Upon information and belief, Defendant has not sued any of the Plaintiff American Muckrakers' donors.

81.     From July 1, 2021, through June 30, 2022, American Muckrakers was able to pay Plaintiff Wheeler $5,375.00 per month.

82.     From July 1, 2022, through September 30, 2022, his salary had to be dropped to $2,700.00 per month.

83.     Defendant's comments about donors in paragraph 69 above are without precedent in Plaintiff Wheeler's 40 years in politics; never before has Plaintiff witnessed donors to nonprofits threatened with legal action for supporting a cause with their donations.  Defendant's statements were meant to inflict damage on the Plaintiffs, in the form of curtailing their donor's support, and it worked as planned.

## CLAIMS FOR RELIEF

### First Claim: Defamation
### (Against Defendant Boebert)

84. Plaintiffs incorporate all previous paragraphs herein by this reference.

85. The Defendant published or caused to be published the above-listed defamatory statements about Plaintiffs.

86. The statements caused Plaintiffs actual damages.

87. The substance or gist of each of the above-listed defamatory statements was false at the time they were published.

88. At the time of publication, Defendant either knew that the challenged statements were false or Defendant made the statements with reckless disregard as to whether they were false.

**Second Claim: Trade Libel**
**(Against Defendant Boebert)**

89. Plaintiffs incorporate all previous paragraphs herein by this reference.

90. The above-referenced challenged statements and written communications are untrue.

91. The Defendant made the communications knowing they were false or with reckless disregard of their truth.

92. The communication of Defendant's statements defaming Plaintiffs resulted in pecuniary damage to Plaintiffs.

93. Plaintiffs' business has been significantly damaged in reputation to the extent that loss of future business may be proven.

**Third Claim: Tortious Interference with Contract**
**(Against Defendant Boebert)**

94. Plaintiffs incorporate all previous paragraphs herein by this reference.

95. The Plaintiffs had contracts and agreements with donors and sponsors in which said persons had agreed to donate to and support Plaintiffs' activities.

96. Defendant knew or reasonably should have known of these contracts and agreements.

97. Defendant, by words or conduct, or both, intentionally caused donors and sponsors not to perform and/or to terminate their agreements, promises and contracts with Plaintiffs.

98. Defendant's interference with the contracts and agreements was achieved through unlawful and improper means, *i.e.,* by defaming Plaintiffs in their professional capacity and integrity.

99. Defendant's interference with said contracts caused the Plaintiffs damages and losses.

### Fourth Claim: Tortious Interference with Prospective Advantage
### (Against Defendant Boebert)

100.    Plaintiffs incorporate all previous paragraphs herein by this reference.

101.    Plaintiffs had a track record of donations, contributions and support and a reasonable expectation that such contracts and agreements with donors and sponsors would continue and result in prospective advantage.

102.    Defendant, by words or conduct, or both, intentionally caused donors and sponsors not to associate with Plaintiffs and to abjure entering into agreements, sponsorships and actions in support of Plaintiffs and their work.

103.    Defendant's interference with the contracts and agreements was achieved through unlawful and improper means, *i.e.,* by defaming Plaintiffs in their professional capacity and integrity.

104.    Defendant's interference caused the Plaintiffs loss of prospective advantages.

### Fifth Claim: Civil Conspiracy
### (Against Defendant Boebert and in concert with John Does 1-25 to be named after discovery)

105.    Plaintiffs incorporate all previous paragraphs herein by this reference.

106.    Defendant and her co-conspirators agreed, by words or conduct, to accomplish an unlawful goal of discrediting and incapacitating Plaintiffs through defaming them in order to prevent their participation in matters of public concern.

107.    One or more unlawful acts were performed to accomplish the goal, namely each of the above-listed challenged statements were made maliciously to defame Plaintiffs and thereby discredit them.

108.    Plaintiffs suffered injury to their reputation, economic damages and losses.

109.    These injuries, damages and losses were caused by said unlawful acts performed to accomplish the goal of discrediting Plaintiffs to prevent them from exercising their free speech and rights of participation in electing government representatives.

**Sixth Claim Violation of Plaintiffs' First Amendment Rights**
**(Against Defendant Boebert)**

110.    All foregoing Paragraphs are incorporated as if set forth fully herein.

111.    The First Amendment prohibits Congress from making laws "abridging the freedom of speech." U.S. CONST. amend. I.

112.    The Constitutions of Colorado and North Carolina provide similar or more robust protection for free-speech rights.

113.    Defendant Boebert, as a member of Congress holds power over media organizations, and has threatened to use her power against their businesses by repealing immunities provided pursuant to the Communications Decency Act, 47 U.S.C. § 230, unless her bidding is done.

114.    Defendant Boebert's threats and power, in part, resulted co-conspirators' agreement to work in concert with Defendant Boebert to defame and discredit Plaintiffs to achieve the goal of undermining their capacity to continue their campaign against Ms. Boebert's reelection as well as their refusal to allow Plaintiffs to even respond on their platforms to the defamation against them (despite repeated requests by Plaintiffs and

counsel merely to be able to speak on their platform to correct the accusations against them).

115.    Defendant Boebert together with other U.S. Representatives regularly hold out the "carrot" of continued protection under Section 230 and antitrust law, while threatening the "stick" by explicit threats to repeal same media companies fail to censor speech those lawmakers disfavor. *See e.g.,* Vivek Ramaswamy and Jed Rubenfeld, Save the Constitution from Big Tech: Congressional threats and inducements make Twitter and Facebook censorship a free-speech violation, WALL STREET JOURNAL (Jan. 11, 2021) ("Either Section 230 or congressional pressure alone might be sufficient to create state action. The combination surely is.").

116.     As a result of such threats and inducements, Defendant Boebert and her co-conspirators are now directly cooperating to prevent Plaintiffs' participation in, and the free exercise of speech regarding, matters of public concern.

117.    Such private-company and government cooperation to abridge Plaintiffs' freedom of speech and exercise of rights to participate in government constitute violations of our federal, Colorado and North Carolina constitutional, jurisprudential and statutory protections. *See Norwood v. Harrison,* 413 U.S. 455, 465 (1973) ("[It's] axiomatic that a state may not induce, encourage or promote private persons to accomplish what [the state] is constitutionally forbidden to accomplish.")

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court enter Judgment on their behalf and against Defendants, jointly and severally for the following relief as is appropriate, mandatory or just:

Case No. 1:23-cv-01463-RMR-KAS   Document 1   filed 06/08/23   USDC Colorado   pg 24 of 24

a. Compensatory damages in an amount to be proven at trial;

b. Consequential damages in an amount to be proven at trial;

c. Noneconomic damages in an amount to be proven at trial;

d. Exemplary damages as may be awardable upon proof of malice;

e. Attorneys' fees as may be mandatory, just and provided for by statute;

f. Pre-judgment and post-judgment interest;

h. Legal costs;

i. Any such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED THIS 8TH DAY OF JUNE, 2023

By:    _/s Dan Ernst_____
        Dan Ernst, Esq. Colo Bar #53438
        ERNST LEGAL GROUP LLC
        217 E. 7th Ave.
        Denver, CO 80203
        (720) 798-3667
        Dan@ernstlegalgroup.com
        *Attorneys for Plaintiff*