**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01463-RMR-SKC

AMERICAN MUCKRAKERS PAC, INC., a foreign entity, and
DAVID B. WHEELER, an individual, North Carolina resident,

     Plaintiffs,

v.

LAUREN OPAL BOEBERT, an individual and Colorado resident, and
JOHN DOES (1-25),

     Defendants.

---

**REPRESENTATIVE LAUREN BOEBERT'S MOTION TO DISMISS UNDER
F.R.C.P. 12(b)(6) AND/OR SPECIAL MOTION TO DISMISS UNDER
COLORADO'S ANTI-SLAPP STATUTE**

---

     This case presents the question whether the First Amendment prohibits claims of defamation and related torts premised on a candidate for public office responding to political attacks from her opponents during a re-election campaign. In the lead up to the 2022 election for Colorado's third congressional district, Plaintiffs American Muckrakers PAC and its founder David Wheeler published a series of widely shared articles that claimed Defendant Representative Lauren Boebert was a prostitute who got her start in politics by being a paid escort for the Koch brothers. Representative Boebert responded in a series of public statements, explaining the fact that these allegations were baseless political attacks: that Mr. Wheeler was a "political hack," a "left-wing political operative," a "[r]adical Democrat," and that his accusations were "completely baseless," "completely false," and constituted "defamation." Hoping to revive those accusations for the 2024 election cycle, Mr. Wheeler and American Muckrakers filed this suit for defamation and related

torts premised on Representative Boebert's 2022 defense of herself and her campaign. Even looking past the fact Representative Boebert's statements were reasonable and truthful defenses against Muckrakers and Mr. Wheeler's extraordinary attacks, the extent of this Court's involvement with Mr. Wheeler's campaign should start and end on the face of the complaint, dismissing the suit on First Amendment grounds consistently affirmed by courts. The First Amendment provides near-total protection for statements like Representative Boebert's made during an electoral campaign, and Wheeler's complaint fails to state a claim and must be dismissed.[1]

## BACKGROUND

David Wheeler formed American Muckrakers PAC, Inc. in part to defeat Representative Boebert in her 2022 re-election campaign for Colorado's third congressional district. "About" Page, americanmuckrakers.com/about ("We worked hard to fire Lauren Boebert but came up 546 votes short in 2022."). Plaintiffs' primary strategy to do so was to trade in sexist tropes, rooted in our Country's worst history of misogyny. *See* Abigail Weinberg, *Stop Spreading Those Deeply Misogynistic Rumors About Lauren Boebert*, Mother Jones (June 15, 2022), available at bit.ly/47lJkKr. When Representative Boebert defended herself from these crude attacks, stating she had never engaged in the indecent and illegal activities that Mr. Wheeler alleged, Mr. Wheeler filed this defamation suit to silence her and to raise money. *See* Defamation Lawsuit Information, https://www.americanmuckrakers.com/defamation (requesting donations to support suit and in the linked press release using the misogynistic cliché that Rep. Boebert is "loud-mouthed" and thus should not serve in Congress).

---

[1]   **Certificate of conferral:** Pursuant to Civil Practice Standard 7.1B(b), the parties have conferred in good faith regarding this motion over email and in a 45-minute phone call on August 18, 2023. Plaintiffs oppose the relief requested.

Mr. Wheeler first accused Representative Boebert of being a prostitute. On June 14, 2022, Muckrakers and Wheeler published a press release, "Rep. Lauren Boebert was an unlicensed paid escort with sugardaddymeet.com." *See* Compl. **Exh. C.** (June 14, 2022 Press Release).[2] Mr. Wheeler wrote, "[t]he American Muckrakers PAC, Inc., today announced their team and volunteers have uncovered that Lauren Boebert was an unlicensed, paid escort and met clients through SugarDaddyMeet.com." *Id.* Mr. Wheeler stated that "she was bankrupt at the time and looking for 'side income,'" describing "her work as 'pay to play.'" *Id.* (scare quotes in original). "She was," Wheeler said, "paid to 'escort' wealthy men." *Id.* (scare quotes in original). Indeed, Wheeler went so far as to say that Representative Boebert's start in politics was the direct result of her prostitution: "Boebert was hired by a wealthy male client in Aspen, Colorado, who was a Koch family member. Boebert's rich client subsequently introduced her to U.S. Senator Ted Cruz (R-TX) in Aspen." *Id.* At that meeting, Wheeler stated, without any substantiation, Cruz allegedly encouraged her to run for Congress. *Id.*

Mr. Wheeler next accused Representative Boebert of having had two abortions as a result of her work as a paid "escort." In the same "sugardaddymeet.com" press release, Wheeler wrote that "Boebert had an abortion at the Planned Parenthood Clinic in Glenwood Springs, Colorado, due to her work" as a prostitute. *Id.* at 1. The "sugardaddymeet.com" press release also

---

[2]   Plaintiffs have filed these exhibits as conventionally submitted materially and have not filed them electronically or provided a copy to Defendant's counsel. However, the exhibits are available on www.americanmuckrakers.com (follow "Defamation Lawsuit" heading hyperlink; then click "Download Exhibits"), from which Defendant obtained them. The Court can consider these exhibits under F.R.C.P. 12(b)(6) because they are incorporated by Plaintiffs' Complaint. The Court can also consider these, and other extrinsic evidence, under Colorado's Anti-SLAPP statute as explained below.

reproduced a text message that says Representative Boebert had "another [abortion] in Grand Junction." *Id.* at 3.

Wheeler attached to the sugardaddymeet.com press release redacted text messages which purported to "corroborate" his "reporting." These text messages included further accusations that Representative Boebert and her ex-husband "had a [m]eth drug problem"; that "[s]he was stripping at the time also"; and that her husband "was dealing [drugs]." **Compl. Exh. C** at 3-4. Those text messages attached three photos that Wheeler said were from Rep. Boebert's sugardaddymeet.com profile. **Compl. Exh. C** at 4-6. Yet the photos, which appear to be of two different women, are obviously not Rep. Boebert.

Wheeler's salacious articles were widely distributed and shared. The day after he published his press release about Boebert being a prostitute and having abortions, "Lauren Boebert" and "Ted Cruz" were the third and fourth most tweeted terms on Twitter. *See* **Def.'s Exh. 1**, Screenshot of archive.twitter-trending.com for June 15, 2022.

 In response to Wheeler's vulgar attacks, Boebert defended herself. She first responded through her counsel in a letter (the "Anderson Letter"). *See* **Def.'s Exh. 2**; *see also* Compl. ¶¶ 41.c, 56, 69 (quoting Anderson Letter). The Anderson Letter stated that "[b]etween June 9, 2022, and June 14, 2022, Muckrakers published a series of false and defamatory statements about Lauren Boebert." *Id.* at 1. The Letter continued, "with even a 5-minute web search, Muckrakers [would have] kn[own] those statements to be false." *Id.* at 3. Muckrakers' statements, the Letter concluded, were "sloppy, reckless, and wildly irresponsible." *Id.*

Similarly, in a series of interviews Boebert stated that Wheeler's statements were part of a coordinated partisan effort to smear her with misogynistic slurs. Those statements, which are

included in Plaintiffs' Complaint at paragraphs 18, 34, 41, 42, 46, 58, 60, 61, and 69, are not action-

able defamation as a matter of law:

| | Statement of Rep. Boebert | Defamation? |
|---|---|---|
| (1) | "There is no evidence to back any of their claims. I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit." Compl. ¶¶ 18.a, 34.1. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth; includes statement of opinion. |
| (2) | "This man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway…. And he changed his story later." ¶¶ 18.b, 34.2. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |
| (3) | "Radical Democrats want me out of office, and they will lie and break the law to try to beat me." Compl. ¶¶ 18.c, 34.4. | No. Made in defense; political rhetoric; includes statement of opinion. |
| (4) | "We're going to make sure this political hack never has the opportunity to do this to anyone else again." Compl. ¶ 34.3 | No. Made in defense; political rhetoric; includes statement of opinion. |
| (5) | "This group's vile conduct demonstrates why people are fed up with politics." Compl. ¶ 41.a. | No. Made in defense; political rhetoric; includes statement of opinion. |
| (6) | "This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated." Compl. ¶ 41.b. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |
| (7) | "The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties." Compl. ¶ 41.c. | No. Statement of opinion; made in defense. |
| (8) | "This is completely baseless, and these allegations are completely false. For them to go after me in this manner is absolutely sexist and disgusting, and this is what people hate about politics. They hate the lies and they hate the personal destruction. This is very damaging, and that is why I'm going after this guy personally and his group with the full force of the law. I am not holding back, and I want to make sure that this never happens to anyone else again." Compl. ¶ 42a. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |

| | Statement of Rep. Boebert | Defamation? |
|---|---|---|
| (9) | "Right, Tomi. These are all lies and isn't it interesting that this is coming from the party of believe all women? I'm not the only one this has happened to. We know they have lied about you as you have stated. They lied about Sarah Palin and nearly every conservative fighter. Heck, even Mother Jones, a far-left leaning publication called these sexist and disgusting claims. I've never had two abortions. I've never been an escort. I've never been a drug addict as they claim or stripper or whatever else they want to add to that and over the next few days verifiable facts will be released that proves what I said that proves that these uh allegations are absolutely false. But here's what's so sad Tomi. The damage has been done. These allegations trended number one on Twitter. When Mr. Wheeler and this PAC released some of their allegations they knew them to be false. Their source told them in a text, and I quote, this story is made up. When they said I was some woman in lingerie in a bed that photo was proven not to be me and these sick hacks still continue to publish the photo and double down saying that it was me so I'm not taking this quietly and won't allow this illegal behavior to continue to happen against myself and I certainly never want to anyone else and that's why I'm moving forward with a lawsuit to sue this PAC. They lied about me and they knew it was lies and that is absolutely illegal, it's like a bully on a playground uh when they can't win they punch you in the face but uh I'm fighting back." Compl. ¶ 46. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |
| (10) | "We have irrefutable evidence that each one of these statements is patently false." Compl. ¶ 56. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |
| (11) | "Partisan organizations putting out blatantly false and disgusting accusations won't stop me from advancing freedom and conservative values, this group's vile conduct demonstrates why people are fed up with politics. I am not going to stand by and pretend this is normal behavior. This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated. The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties. Attached is a letter from my attorney introducing our response to these lies." Compl. ¶ 60. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |

| | Statement of Rep. Boebert | Defamation? |
|---|---|---|
| (12) | "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false. Their source told them in a text, and I quote, this story is made up." Compl. ¶ 61 | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |
| (13) | "Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation." Compl. ¶ 69. | No. Made in defense; political rhetoric; not made with reckless disregard of the truth. |

Statements (10) and (13) were not made by Boebert herself, but in the Anderson Letter.

And yet, even if on their face the statements cited by Mr. Wheeler could give rise to a claim of defamation, they are true and thus not actionable on the merits under the First Amendment. Rep. Boebert was pregnant with her first son when Mr. Wheeler alleged she had her first abortion, and never had any other abortion. **Def's Exhibit 3**, Declaration of Representative Boebert ("Boebert Decl.") at ¶¶ 5, 6, 9. Wheeler's only evidence that she had such an abortion are unverifiable sub-Tweets and similarly unverifiable text messages. *E.g.*, **Compl. Exhs. D9-D15.** The picture of the "escort" Wheeler published on his website is plainly not Boebert. And apart from subtweets from unverifiable accounts, Wheeler has produced no evidence that Representative Boebert has used illegal drugs, *e.g.*, **Compl. Exhs. D8, D16**, as she has not, Bobert Decl. at ¶ 11. Indeed, Wheeler's key source admitted to him that the source's accusations against Rep. Boebert were "[t]otally made up." **Compl. Exh. N2** at 2.

Mr. Wheeler did not respond to Rep. Boebert's denial with his own counter-speech—the remedy the First Amendment provides him. *See United States v. Alvarez*, 567 U.S. 709, 727 (2012) ("The remedy for speech that is false is speech that is true. This is the ordinary course in a free society."). Rather, Mr. Wheeler responded by filing this suit for defamation, the aim of which is to

suppress political activity—a judicial remedy the First Amendment prohibits. The apparent secondary goal of his suit is to fundraise. On the "Defamation Lawsuit" page of American Muckrakers website, Wheeler has included a "Donate" button. Just above that is a link to his press release regarding the suit, in which he doubles down on his misogynistic rhetoric: "[t]his lawsuit is about holding a loud-mouthed, do-nothing for Colorado, hypocritical politician accountable for her actions." Defamation Lawsuit, https://www.americanmuckrakers.com/defamation (last visited August 21, 2023); *see also* **Def.'s Exh. 4** at 1 (copy of press release regarding lawsuit).

**LEGAL STANDARDS**

### 1.   Motions to dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (internal citation omitted). The court typically must not look outside the pleadings when deciding a motion to dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But there are three exceptions to this general rule: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id* (internal citations omitted).

### 2.   Special motions to dismiss pursuant to C.R.S. § 13-20-1101(3)

Like many states, Colorado has recently enacted an "Anti-SLAPP" statute, the purpose of which is to deter lawsuits, like this one, whose aim is to chill First Amendment activity, and to codify and enhance the protections articulated by *Protect Our Mountain Environment, Inc. v. District Court In & For Jefferson County.,* 677 P.2d 1361 (Colo. 1984). Colorado's Anti-SLAPP statute does so primarily by authorizing a defendant to file a "special motion to dismiss," C.R.S. § 13-20-1101(3)(a), which gives the defendant an early opportunity to dismiss claims that are unlikely to be successful at a trial in the normal course.

An Anti-SLAPP special motion to dismiss is subject to a unique standard: a court must dismiss a complaint "unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim." *Id.* § 13-20-1101(3)(a). In ruling on the motion, a Court must consider "supporting and opposing affidavits stating the facts upon which the liability or defense is based," *id.* at § 13-20-1101(3)(b), and hold an evidentiary hearing within twenty-eight days of the date the motion is filed, *id.* at § 13-20-1101(5). A defendant prevailing on a special motion to dismiss is "entitled to recover [her] attorney fees and costs." *Id.* at § 13-20-1101(4)(a). Discovery is automatically stayed by filing a special motion to dismiss. *Id.* at § 13-20-1101(6). And an order granting or denying a special motion to dismiss is immediately appealable. *Id.* at § 13-20-1101(7).

Every decision to have considered the question has ruled that Colorado's Anti-SLAPP statute applies in federal court. *See Moreau v. United States Olympic & Paralympic Comm.*, 2022 WL 17081329, at *4 (D. Colo. 2022) (Sweeney, J.); *see also Coomer v. Make Your Life Epic LLC*, 2023 WL 2390711, at *4 (D. Colo. 2023) (Martinez, J.) ("The Court has carefully considered Judge

Sweeney's persuasive analysis [in *Moreau*] and reasoning on this issue and has decided that it, too, will apply Colorado's anti-SLAPP statute in this action."). *Moreau* explains that although some of the provisions of Colorado's Anti-SLAPP law *might* conflict with the Federal Rules (*e.g.*, the requirement of an evidentiary hearing), the statute's burden-shifting framework for analyzing special motions to dismiss "exist side by side" the Federal Rules of Civil Procedure and thus should be applied in federal court. *Moreau*, 2022 WL 17081329, at *4.

To avoid any conflict with the Federal Rules, special motions to dismiss mounting a *legal* challenge should be analyzed under Rule 12(b)(6) standards, whereas motions to dismiss mounting a *factual* challenge should be analyzed under Rule 56 standards. *Id.* at *7. *Moreau* then requires application of the Anti-SLAPP statute's two-step burden-shifting framework. At step one, the defendant bears the burden to show that the underlying conduct arises from an act "in furtherance of the defendant's right of petition or free speech in connection with a public issue." *Id.* (cleaned up) (citing C.R.S. § 13-20-1101(3)(a)). "The burden the anti-SLAPP statute's first step imposes is not particularly demanding." *Id.* (cleaned up). At step two, the burden shifts to the plaintiff to show a "reasonable likelihood," it will succeed on its claim or claims. *Id.* at *8.

## ARGUMENT

Plaintiffs' Complaint must be dismissed under Rule 12(b)(6) and/or under Colorado's Anti-SLAPP statute, either one of which is an adequate independent basis to resolve this suit. Plaintiffs have alleged no statements made with actual malice. Yet even if they had, a defense against an attach during a reelection campaign cannot give rise to liability under the First Amendment. Plaintiffs have failed to plead special damages. And apart from unverifiable anonymous sources, Plaintiffs have no evidence supporting their crude attacks. Finally, this suit plainly implicates

Representative Boebert's right of free speech and thus Colorado's Anti-SLAPP statute. Thus, because Plaintiffs both have failed to carry their pleading burden *and* are unlikely to succeed on the merits of their claims, the suit must be dismissed.

**1. Plaintiffs have failed to allege any actionable defamatory statements.**

**1.1.  Plaintiffs have failed to allege clear and convincing evidence of actual malice.**

The tort of defamation exists to rectify harm done by injurious falsehoods. *McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008). Yet the "interest" the tort embodies "in protecting an individual's reputation" is generally outweighed by "society's interest in encouraging and fostering vigorous public debate, an interest protected by the First Amendment to the United States Constitution and article II, section 10 of the Colorado Constitution." *Id.* In a case like this one involving public figures and statements regarding a matter of public concern,[3] decisions beginning with *New York Times v. Sullivan*, 376 U.S. 254 (1964), and reaffirmed by the Supreme Court in the preceding months, *see Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023), have heavily modified the law of defamation to ensure political discourse is not deterred by litigation.

For example, rather than a preponderance-of-the-evidence standard, a plaintiff must prove falsity of the statements alleged by clear and convincing evidence. *McIntyre*, 194 P.3d at 524. Clear

---

[3]  American Muckrakers and Mr. Wheeler are public figures or, at a minimum, limited public figures. American Muckrakers and Wheeler have "voluntarily inject[ed themselves] . . . into a particular public controversy," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)—namely, the 2022 and 2024 reelection campaigns of Representative Boebert. Similarly, the 2022 and 2024 reelection campaigns of Representative Boebert are plainly matters of public concern. *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008). ("'[A] matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published." (internal quotation marks omitted)).

and convincing evidence is "evidence . . . which is unmistakable and free from serious or substantial doubt." *DiLeo v. Koltnow*, 613 P.2d 318, 323 (Colo. 1980). Similarly, a plaintiff bears the burden to prove that the statements were made with "actual malice," *i.e.* "actual knowledge that the statement is false or with reckless disregard for whether the statement is true." *McIntyre*, 194 P.3d at 524. Actual malice is a *subjective* standard, meaning a plaintiff must plead and prove that a defendant "harbored subjective doubt" her statements were false. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) ("[I]t is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt."). Finally, the plaintiff must establish actual damages, even if the statements are defamatory *per se*. *McIntyre*, 194 P.3d at 524.

The thrust of Plaintiffs' complaint is that Representative Boebert defamed Plaintiffs when she stated that Plaintiffs' accusations of her being an escort who used drugs and had had abortions were part of a partisan effort to unseat her were false. Compl. ¶¶ 18, 34, 41, 42, 46, 58, 60, 61, and 69. Plaintiffs' statements *were* false, as explained fully below. But even accepting the Complaint's allegations at face value under Rule 12(b)(6), apart from conclusory statements, the Complaint fails to allege that Representative Boebert subjectively knew her statements to be false. To the contrary, the Complaint and its exhibits provide the basis for Representative Boebert's statements—or at least provide the basis for a subjective belief in the truth of those statements. First, the Complaint attaches as **Exhibit N2** a text message from Wheeler's "source" that states the source's story about Rep. Boebert were "totally made up." **Exhibit N2** at 2. Second, the pictures on which Wheeler based his stories, which are attached to the Complaint as **Exhibit C** at pp. 4-6, are plainly not Representative Boebert. Third, the remainder of Wheeler's "sources" were anonymous text

messages and/or unverifiable subtweets, **Exhibit D8, D16,** the unverifiable nature of which is *prima facie* evidence that Wheeler's attacks were made with actual malice and not based in fact. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (statements based "on an unverified anonymous telephone call" is evidence of actual malice under *New York Times v. Sullivan*). These are precisely the facts cited by Representative Boebert in her statements that Wheeler's attacks were untrue and defamatory. *E.g.*, Compl. ¶ 46, 61. That Plaintiffs' own complaint admits the shakiness of their own reporting and that Representative Boebert specifically cited the clear holes in the stories, undercuts any argument that she had a "high degree of awareness of probable falsity" or "entertained serious doubts as to the truth of" her statements. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

### 1.2. Defending oneself against slanderous statements during a political campaign is not actionable defamation.

The characterization of Mr. Wheeler's attacks as "defamatory" is a statement of opinion, not capable of giving rise to a claim of defamation. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz,* 418 U.S. at 339-40. "An opinion [that] is unfounded" thus "reveals its lack of merit when the opinion-holder discloses the factual basis for the idea." *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). "If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts." *Id.* This rule has special significance in a case, like this one, where a plaintiff makes defamatory accusations about the defendant, the defendant responds that the accusations are false and defamatory, and then the plaintiff sues the defendant for defamation. In these circumstances, the defensive opinion of the defendant that

plaintiff's statements are defamatory is not actionable if the basis for the defendant's opinion is "adequately disclosed." *Hill v. Cosby*, 665 F. App'x 169, 176 (3d Cir. 2016).

Here, Representative Boebert disclosed the basis for her opinion that Mr. Wheeler's attacks were defamatory, stating:

- "This man [Wheeler] was told by his source that one of his allegations was made-up before he released it," Compl. ¶ 34.2;

- "[H]e [Wheeler] changed his story later," *id.*;

- American Muckrakers is funded by "Democrat donors and run by two left-wing political operatives," *id.* at ¶ 41.b;

- "Mother Jones, a far-left leaning publication called these sexist and disgusting claims," *id.* at ¶ 46;

- "I've never had two abortions," *id.*;

- "I've never been an escort," *id.*;

- "I've never been a drug addict as they claim or stripper," *id.*;

- "Their source told them in a text, and I quote, this story is made up," *id.*; and

- "[T]hat photo was proven not to be me," *id.*

Faced with this kind of disclosure, it is up to the "listener"—the electorate of Colorado's third congressional district—not a court, to "choose to accept or reject [an opinion] on the basis of an independent evaluation of the facts." *Redco*, 758 F.2d at 972.

### 1.3.    Hyperbole is not actionable defamation—political hyperbole doubly so.

This conclusion is all the more true in the context of a political campaign. Defamatory meaning cannot be assessed in isolation. Rather, "[a]llegedly defamatory language must be examined in the context in which it is uttered." *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983). There is thus no hard-and-fast rule for when a statement is defamatory; "[p]rotecting the

important competing interests of free speech and reputation requires a flexible approach anchored in the context of each cause of action." *Id.* "[A]ll the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed, should be considered." *Id.* In practice, this means that "[e]ven false statements of fact are protected from a defamation claim if any reasonable person would recognize the statements as" rhetoric, hyperbole, or parody. *Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010).

Representative Boebert's statements were made in the context of a heated, partisan, reelection campaign, and "[w]hen we read charges and countercharges about a person in the midst of [a political] controversy we read them as hyperbolic, as part of the combat, and not as factual allegations whose truth we may assume." *Ollman v. Evans*, 750 F.2d 970, 1002 (D.C. Cir. 1984) (Bork, J., concurring). This is because when an individual enters the "political arena," he or she "must expect that the debate will sometimes be rough and personal." *Harte-Hanks*, 491 U.S. at 687 (quoting Judge Bork's concurrence from *Ollman*); *see also Mink*, 613 F.3d at 1005 (adopting Judge Bork's *Ollman* concurrence). During "an intense political campaign, . . . many cruel and damaging things [a]re said about various candidates for major political offices." *Ollman*, 750 F.2d at 1005 (Bork, J., concurring). But "[w]e expect people who engage in controversy to accept that kind of statement as their lot." *Id.* This expectation that speech in the political arena—even speech that would be defamatory in other contexts—is protected by the First Amendment is as old as our country's history. The First Amendment was adopted, after all, by colonists whose first major protest of the Stamp Act was to burn effigies of British politicians in central Boston. Eugene Volokh, *Symbolic Expression and the Original Meaning of the First Amendment*, 97 Geo. L.J. 1057, 1060-61 (2009).

All of Representative Boebert's statements about Plaintiffs were couched in terms of non-actionable campaign rhetoric. Representative Boebert's use of phrases like "Radical Democrats," "political hack," "far-left Democrat donors," "left-wing political operatives," "conservative fighter," "advancing freedom and conservative values," and "[p]artisan organizations putting out blatantly false and disgusting accusations" place any alleged defamatory statement in its proper context: the heated and partisan rhetoric of a political campaign. In other words, when properly contextualized, the statements that American Muckrakers and Mr. Wheeler's attacks were "completely baseless" and "completely false" were synonymous with Representative Boebert's non-actionable rhetoric like "left-wing political operatives" and "political hack." Viewed in this light, "we [sh]ould be astonished and highly disapproving" of Plaintiffs' decision to bring "an action for libel" based on statements made in the political arena—statements they elicited with their own attacks. *See Ollman*, 750 F.2d at 1005 (Bork, J., concurring).

Were the Court to rule otherwise, that defensive campaign rhetoric is actionable, the slippery slope is easy to see. Could then-Vice President George H.W. Bush have filed a defamation suit against then-Senator Bob Dole when Sen. Dole accused the Vice President with "lying about my record" during the 1988 primary campaign?[4] Could the candidates in the recent race for an open seat on the Wisconsin Supreme Court file defamation suits against each other for saying their

---

[4]   *See* Steve Kornacki, *Bush and Dole: A political rivalry for the ages. And then that final salute.*, NBC News (Dec. 5, 2018, 3:22 PM) ("Then Brokaw asked Dole if he had any message for Bush. 'Yeah,' he replied, 'stop lying about my record.'"), https://www.nbcnews.com/politics/white-house/bush-dole-political-rivalry-ages-then-final-salute-n944521.

opponent is "quick to lie"?[5]  Does Senator Ted Cruz have a viable claim against Senator Marco Rubio when Rubio said during the 2016 election, "[f]or a number of weeks now, Ted Cruz has just been telling lies"?[6] Does Tudor Dixon have a claim for Michigan Governor Gretchen Witmer's accusation that "[n]one of what she [Dixon] said is true?"[7] Accusations of falsehoods are, for good or ill, a time-worn aspect of American political campaigns. Listeners hear such accusations for what they are: rhetoric, not defamation. And if courts were willing to entertain defamation suits arising from statements made during a campaign, there would be a never-ending torrent of such suits.

## 2. Rep. Boebert's statements were true and thus not made with reckless disregard.

The Court can end its analysis here and dismiss the complaint for failure to state a claim, without considering any factual disputes under F.R.C.P. 56 and Colorado's Anti-SLAPP statute. Yet if the Court decides to consider "supporting and opposing affidavits stating the facts upon which the liability or defense is based," C.R.S. § 13-20-1101(3)(b), Plaintiffs' suit fails there, too. In short, Plaintiffs' misogynistic slurs were, in fact, baseless. As to Wheeler's charge that she had abortions in 2004 and 2009, Representative Boebert was pregnant with two of her sons at those respective times. Boebert Decl. at ¶ 8. During the time Wheeler says she was a paid escort, Representative Boebert was a successful small business owner and of course has never engaged in prostitution.

---

[5]    Henry Redman, *Supreme Court candidates accuse each other of lying, extremism in sole debate*, Wisconsin Examiner (March 21, 2023, 2:27 PM), https://wisconsinexaminer.com/2023/03/21/supreme-court-candidates-accuse-each-other-of-lying-extremism-in-sole-debate/.

[6]    Katie Zezima, *Liar, liar: A charged word is now common in the GOP race*, The Washington Post (Feb. 19, 2016, 5:53 PM), https://www.washingtonpost.com/politics/liar-liar-a-charged-word-is-now-common-in-the-gop-race/2016/02/19/96464d34-d63e-11e5-b195-2e29a4e13425_story.html.

[7]    Eric Bradner, *4 takeaways from the Michigan governor debate between Gretchen Whitmer and Tudor Dixon*, CNN (Oct. 25, 2022, 9:10 PM), https://www.cnn.com/2022/10/25/politics/whitmer-dixon-debate-michigan-governor-takeaways/index.html.

Boebert Decl. at ¶¶ 10-11. And for these reasons and those cited above, Representative Boebert made clear her basis for defending herself against Plaintiffs' attacks. Boebert Decl. at ¶¶ 6-11. Plaintiffs are not reasonably likely to show by clear and convincing evidence that Representative Boebert's statements were defamatory or made with actual malice.

### 3.   Muckrakers has failed to plead special damages pursuant to F.R.C.P. 9(g).

An essential element of Plaintiffs' claims for defamation and trade libel is special damages. *Teilhaber*, 791 P.2d at 1167 (commercial disparagement / trade libel); *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (defamation *per quod*). "Special damage" means "the loss of something having economic or pecuniary value" and requires an "'actual temporal loss,' a loss that is 'pecuniary or capable of being estimated in money.'" 2 Law of Defamation § 7:2 (2d ed.). Special damages must be pleaded with specificity. *Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 WL 2415167, at *2 (D. Colo. June 10, 2011). To make the required showing for a defamation claim, a plaintiff must identify "specific monetary losses that [the] plaintiff incur[red] because of the defamatory publication." *Stump v. Gates*, 777 F. Supp. 808, 826 (D. Colo. 1991), *aff'd,* 986 F.2d 1429 (10th Cir. 1993). Special damages "do not include injuries to a plaintiff's reputation or feelings which do not result in monetary loss." *Id.* "To make the required showing," for a trade-libel claim, "a plaintiff usually must identify those persons who refuse to purchase his product because of the disparagement." *Teilhaber*, 791 P.2d at 1167. If impracticable, however, a plaintiff can specifically plead the lost profits it has suffered, "using detailed statistical and expert proof." *Id.* at 1168. "[S]pecial damages must result 'from conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation.'" *Stump*, 777 F. Supp. at 826 (quoting *Lind v. O'Reilly*, 636 P.2d 1319, 1321 (Colo. App. 1981)).

*General Steel* is instructive. There, the Court dismissed a counterclaim for commercial disparagement for failure to plead special damages. 2011 WL 2415167, at *2-*4. The counterclaim-plaintiff in *General Steel* alleged that "one or more customers breached their agreement with [counterclaim-plaintiff] or chose to forego business associations with [counterclaim-plaintiff] because of [counterclaim-defendant's] disparaging comments, thus causing [counterclaim-plaintiff] to lose significant business and be damaged." *Id.* at *3 (cleaned up). The counterclaim-plaintiff further alleged that, "by disparaging [counterclaim-plaintiff] with false statements concerning its business, [counterclaim-defendant] has made sales it would not otherwise have made and caused harm to [counterclaim-plaintiff's] reputation." *Id.* (cleaned up). Finally, the counterclaim-plaintiff alleged "[u]pon information and belief, [counterclaim-plaintiff] has lost sales and the attendant profits as a direct and proximate result of [counterclaim-defendant's] conduct as described above." *Id.* (cleaned up). The Court ruled that these allegations were insufficient under Rule 12(b)(6) and 9(g) because the counterclaim-plaintiff had not "identified customers lost on account of the business disparagement," "specifically pled the lost profits it has suffered," or pleaded "evidence of causation." *Id.*

*General Steel* is on all fours here. Plaintiffs' complaint does not allege specific donors it lost as a result of Rep. Boebert's defense of herself. And while Plaintiffs generally allege that Muckrakers'[8] donations decreased after Representative Boebert's statements, Compl. ¶¶ 74-82, Plaintiffs make no specific allegations as to causation or produce the "detailed statistical and expert" analysis required by *Teilhaber* to show that any decrease in revenue was caused by Representative

---

[8]   Plaintiffs make almost no allegations regarding specific damages suffered by Mr. Wheeler. The defamation and trade libel claim asserted by him must be dismissed for failure to plead special damages.

Boebert's response. At most, Plaintiffs' Complaint cites general dollar figures regarding revenue, but fails to plead how any specific loss of revenue occurred because of Representative Boebert's comments as opposed to, for example, donors refusing to support Mr. Wheeler's crude publications. Plaintiffs' defamation and trade-libel claims should be dismissed for this additional reason.

### 4. Muckrakers's claims of civil conspiracy, commercial disparagement, and trade libel cannot be premised on First Amendment protected speech.

Plaintiffs' claims for civil conspiracy, commercial disparagement, and trade libel must be dismissed for the same reasons above: they fail to allege any actionable defamatory statements. The First Amendment shield against a claim of defamation arising from statements made in the course of an election apply equally to non-defamation torts, where the underlying misconduct is some First-Amendment protected speech or activity. *E.g.*, *Jefferson County School District No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 857-58 (10th Cir. 1999) (affirming judgment on intentional interference with contract and with prospective business relations claims as barred by the First Amendment); *Teilhaber*, 791 P.2d at 1167 (holding that the constitutional protections afforded a defendant in a defamation action are applicable to a defendant in a product disparagement action).[9] As the Tenth Circuit explained in *Jefferson County School District*, "the chilling effect on

---

[9]   *See also  Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988)("We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with "actual malice."); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1201 (10th Cir. 2007) ("If the alleged impropriety, however, is an allegedly defamatory statement, then the [tortious] interference claim must fail if the statement is not an actionable defamation" under *NYT v. Sullivan*); *X-Tra Art, Inc. v. Consumer Union of U.S.*, 48 F.3d 1230, at *2 (9th Cir. 1995) (unpublished) ("This zone of protection is created by rules that limit media defendants' liability for defamatory publications. These rules apply not only to defamation actions, but to 'all claims whose gravamen is the alleged injurious falsehood of a statement.'"); *SCO Grp., Inc. v. Novell, Inc.*, 692 F. Supp. 2d 1287, 1290 (D. Utah 2010) ("The Tenth Circuit also rejected claims for intentional interference with contract and for intentional interference with prospective business relations on First Amendment grounds, noting that lower courts

protected speech that might ensue if damages could be recovered" for non-defamation torts premised on protected speech would be similar to defamation claims.  175 F.3d at 857. Courts thus look behind the label of the cause of action to determine whether the First Amendment applies. *-Tra Art, Inc. v. Consumer Union of U.S.*, 48 F.3d 1230, at \*2 (9th Cir. 1995) (unpublished). Here, Plaintiffs' claims for trade libel, intentional interference with contract, intentional interference with prospective business advantage, and civil conspiracy are each premised on Representative Boebert's statements responding to Mr. Wheeler's attacks. Compl. ¶¶ 90, 98, 103, 106. They are therefore subject to dismissal for the same reasons as the defamation claim.

**5. Muckrakers's First Amendment claim fails under *Buentello v. Boebert*, 545 F.Supp.3d 912 (D. Colo. 2021).**

Finally, Muckrakers and Wheeler's claim that Rep. Boebert has violated their First Amendment rights because she allegedly "holds power over media organizations" fails under the highly similar decision in *Buentello v. Boebert*, 545 F.Supp.3d 912 (D. Colo. 2021). There, the Court held that a congresswoman (Representative Boebert) could not be liable under the First Amendment as a matter of law because congressional representatives, unlike executive branch officials, have no

---

had rejected "a variety of tort claims based on speech protected by the First Amendment."); *Henderson v. Times Mirror Co.*, 669 F. Supp. 356, 362 (D. Colo. 1987), *aff'd*, 876 F.2d 108 (10th Cir. 1989) (dismissing intentional interference claim under *NYT v. Sullivan*); *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.,* 945 F.Supp. 220, 224 (D. Kan. 1996) (concluding that letters that constituted expressions of opinion protected by the First Amendment could not form the basis of plaintiff's tortious interference with contact claim); *Cousins v. Goodier*, 283 A.3d 1140 (Del. 2022) (affirming judgment for defendant who had been sued for, inter alia, tortious interference and defamation, because plaintiff had allegedly lost his law firm partnership and been reputationally damaged due to defendant's email to law firm complaining that plaintiff was privately litigating a "shockingly racist" lawsuit; Delaware Supreme Court held that email was protected by the First Amendment as regarding a matter of public concern, not containing any false statement of fact, and not implying any false statement of fact).

individual power to affect the constitutional rights of others and thus cannot be a "state actor" under *West v. Atkins*, 487 U.S. 42, 49 (1988):

> Put simply, legislators legislate. Their state-created powers are to propose legislation and to vote—and little else. . . . The First Amendment states that '*Congress* shall make no law . . . abridging the freedom of speech . . .' U.S. Const. amend. I. Congress, not its individual members, commands the federal government, and it is that body that the First Amendment sought to constrain. Individual legislators do not have the constitutional power to either make law or abridge speech, and thus their individual actions are not within the First Amendment's coverage.

*Id.* at 919. Under *Buentello*, Representative Boebert's statements during a political campaign cannot give rise to First Amendment liability as a matter of law. Indeed, Plaintiffs cite no official act of Representative Boebert that could remotely give rise to a First Amendment violation. This claim must be dismissed.

## CONCLUSION

Plaintiffs' complaint reflects an ill-advised attempt to regulate the political arena through a strategic lawsuit. Because the First Amendment shields speech made in the "highly charged atmosphere" of "an intense political campaign" from judicial scrutiny, *Ollman*, 750 F.2d at 1005, Plaintiffs' Complaint fails as a matter of law and must be dismissed with prejudice.

DATED: August 22, 2023.

Respectfully submitted,

*s/ Andrew Nussbaum*

Andrew Nussbaum, Esq.
Edward Gleason, Esq.
Nussbaum Gleason PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-2386
Email:  andrew@nussbaumgleason.com
        ed@nussbaumgleason.com

Suzanne Taheri, Esq.

Maven Law Group
6501 E. Belleview Ave, Suite 375
Denver, CO 80111
Phone: (303) 218-7150
Email: ST@westglp.com
*Attorneys for Rep. Boebert*