**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-01463

AMERICAN MUCKRAKERS PAC, INC., a foreign entity, and DAVID B. WHEELER, an individual, North Carolina resident;
Plaintiffs

v.

LAUREN OPAL BOEBERT, an individual and Colorado resident, and JOHN DOES (1-25);
Defendants.

_____

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE PLAINTIFFS' FIRST AMENDED COMPLAINT**
_____

COME NOW Plaintiff David B. Wheeler and American Muckrakers PAC, Inc. ("Plaintiffs") to respectfully submit this Reply in support of their motion for leave to file an amended complaint pursuant F.R.C.P. Rule 15.

F.R.C.P. Rule 15 provides authority to grant Plaintiffs' request for leave to file their First Amended Complaint ("FAC"). A request to amend must be freely granted and can be properly denied only in cases where Defendant demonstrates futility (*e.g.*, if there were previous fruitless attempts to amend), bad faith (*e.g.*, filing an amendment for purpose of delay rather than for evaluation of a legal claim on its merits) or undue prejudice. *Stender v. Cardwell*, 2011 U.S. Dist. LEXIS 38502, at *1 (D. Colo. Apr. 1, 2011) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."). In the

1

absence of any apparent or declared reason to deny leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment, leave to amend should be freely given and a court's denial of leave to amend is abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

Defendant states that "Rather than respond to the motion to dismiss, Plaintiffs have requested leave to file a first amended complaint" (Response p.1); this is incorrect, Plaintiffs have filed a Response to Defendant's motion to dismiss pursuant Rule 12(b)(6) and special motion pursuant to C.R.S. § 13-20-1101 and rather than relitigate those arguments in this Reply, incorporate herein that Response along with all its exhibits, affidavits, attachments and oral arguments provided at the hearing regarding said motion by this reference.[1]

Defendant asserts that Plaintiffs' request for leave to amend should be denied because it is motivated by bad faith. Defendant asserts that the FAC's proposed deletions reveal an improper or bad-faith purpose. But, the proposed deletions in the FAC are an attempt to focus attention on

---

[1] Plaintiffs will reiterate, however, that with the adoption by the Colorado Supreme Court of the reasoning of *Milkovich v. Lorain Journal Co.*, the standard of *Burns v. McGraw-Hill* was modified and the reasoning of *Ollman v. Evans* rejected:

> "In *Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351 (Colo. 1983), this court set forth the standard for determining the actionability of a defamation claim. The Burns standard was subsequently fortified by *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990), which eliminated the arbitrary distinction between statements of fact and statements of opinion. The respondents assert that because their communications are statements of opinion, they are constitutionally protected speech. We are not persuaded." *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994).

Plaintiffs also point out that the reasoning of *Hill v. Cosby* does not immunize a speaker when what she "discloses" to support her defamation is a malicious lie, as in this case, Defendant's claim that she has texts revealing that Plaintiffs' source admits to "making it all up."

Defendant's intentionally misleading statements (*e.g.,* that Plaintiffs published things they knew were "made up", *see* FAC ¶ 14) by removing some immaterial statements included in the original complaint. Defendant is incorrect when she asserts that these proposed deletions are "a tacit concession of its [the deleted statements'] materiality" (Response p.5); to the contrary, they are an indication that Plaintiffs believe these proposed deleted statements are immaterial to the central matter – *i.e.*, Defendant's maliciously defamatory statements against Plaintiffs.

Defendant also asserts that Plaintiffs' request for leave to amend should be denied because "Amendment is not proper, moreover, if the proposed amended complaint is futile (*i.e.* it would not withstand a motion to dismiss), *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992)". Response p.7. However, the citation to *Ketchum* is inapposite. In *Ketchum*, the trial court converted defendant's motion to dismiss into a motion for summary judgment, granted the motion, and denied plaintiff's motion to amend and imposed restrictions on plaintiff's future filings of pro se complaints by requiring him to be represented by an attorney unless he first obtains a trial court's permission to proceed pro se. The Tenth Circuit affirmed these rulings by holding that plaintiff's action was properly dismissed under 28 U.S.C.S. §1915(d) because the action was "frivolous" and that the pro se author was a "vexatious litigant" who had filed seven lawsuits in a three-week period and eight other actions in the previous three years. These are not the circumstances that obtain in this case or to these Plaintiffs.

Defendant is also incorrect in her assertion that Plaintiffs' proposed sixth claim for relief, abuse of process, "is devoid of any factual content sufficient to state a claim for relief." Response p. 5-6. The elements of a claim for abuse of process in Colorado are: (1) Defendant intentionally initiated a legal process (2) for a purpose other than the proper purpose of that legal action (3)

3

causing Plaintiff damage. *See* CJI-Civ. 17:10. The proposed FAC includes the following factual content relevant to establishing a plausible claim for abuse of process:

> 56. A news article on Boebert claiming she was referring Wheeler for criminal charges to the Mesa County, Colorado, District Attorney, was written by Charles Ashby of the Grand Junction Sentinel on June 20, 2022. In that article, Ashby reports, "While such a law does exist, there is no known time when it has ever been prosecuted anywhere in Colorado, Mesa County District Attorney Dan Rubinstein said. I will also note that, as of now, I have not received any request to investigate such a claim," he said. Once again Defendant is attempting to silence Wheeler by making defamatory claims his actions were criminal and Wheeler was going to be prosecuted by the local District Attorney.
>
> 63. Defendant used a tactic when on these radio and TV shows of not only threatening Plaintiffs with suit but of publicly threatening with suit anyone who may donate to Plaintiff.
>
> 64. Defendant made the following statement, through her attorney, to the news media on June 17, 2022: Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation. *See* **Exhibit J6**.
>
> 65. Defendant used this tactic knowing full-well that she had no basis in law for such threats of suit against potential donors to American Muckrakers. Defendant's statements regarding her intent to bring suit not only against Plaintiffs but against their donors was designed to threaten, intimidate, and defame Plaintiffs' donors and was in fact successful in silencing them and dissuading them from participating in self-government and exercising their First Amendment rights.
>
> 66. Defendant misused her position as a public figure to threaten Plaintiffs' donors in hopes that their fear of a lawsuit (regardless of whether it lacked any merit whatsoever) and would dissuade them from supporting Plaintiffs. This tactic worked.
>
> 74. Soon after Defendant broadcast her intent to sue American Muckraker donors on radio, television and on-line publications, donors to emailed to cancel their donations to Plaintiffs, come citing their fear of liability. These donors include, but are not limited to, Lori Dasko of Colorado; Marianne Kipper of Colorado; Arianthe Stettner of Colorado; and Susan Gamm of Colorado.
>
> 31. [106.] Defendant Boebert initiated a Court proceeding for a temporary restraining order, for the ulterior purpose of preventing Plaintiffs from reporting on her for a critical period of time right before the election.

> 32. [107.]  Defendant Boebert delayed the proceeding intentionally to obtain the needed deterrence of Plaintiffs from reporting on her, and then abandoned the proceeding when it came time to have to present evidence before a Judge, not even showing up at the scheduled hearing on the temporary restraining order.
>
> 33. [108.]  Plaintiffs were caused damages. They were, in fact, deterred from reporting on Defendant for the period of time intended under threat of punishment for contempt of court. Additionally, Plaintiff suffered the embarrassment of having a temporary restraining order issued against him, for which he was confronted by donors who were concerned about the behavior that Defendant alleged against him including that he criminally stalked and physically threatened her. Indeed, Col. Morris Davis, co-founder of American Muckrakers, resigned from the voluntary board and asked that he be removed from American Muckrakers' materials out of concern from being associated with an organization that had a temporary restraining order against it, even if everything that Defendant asserted in that filing was false and inflammatory.

The above-listed factual allegations, when taken as true, are sufficient to establish a plausible claim for Plaintiffs' abuse of process claim against Defendant.

Defendant's attempt to turn Plaintiffs' motion for leave to amend into a dispute about the facts of Plaintiffs' claim is inappropriate to the procedural posture here and would perhaps be more apt in the context of Defendant's own motion for summary judgment should she wish to file one. Defendant's assertion that "Rep. Boebert had counsel present at the scheduled hearing" or any other contest of the facts alleged in the proposed FAC, are irrelevant to the court's determination of whether Plaintiffs should be granted leave to file these allegations. Defendant asks the Court to determine facts in a manner more appropriate to a motion for summary judgment than a response to a request for leave to amend, when she asserts (what Plaintiffs deny) that "the underlying judicial record makes clear that the suit was not filed for an ulterior purpose and there was no intentional delay." Response p.7.

The proposed First Amended Complaint states that Rep. Boebert "initiated a Court proceeding for a temporary restraining order, for the ulterior purpose of preventing Plaintiffs from reporting on her for a critical period of time right before the election" and that Rep. Boebert

"delayed the proceeding intentionally . . . and then abandoned the proceeding when it came time to have to present evidence before a Judge, not even showing up at the scheduled hearing on the temporary restraining order."

Plaintiffs do not intend to convert this proceeding into a dispute over summary judgment, and do not herein bring all their evidence to bear to dispute Defendant's claims, but there are nevertheless false assertions made in the Defendant's Response that Plaintiffs feel compelled to deny rather than let stand without any answer:

1. Defendant falsely and blithely labels Plaintiff Wheeler as a "misogynist" and "sexist". Plaintiffs deny this assertion; and point out that four main sources for Plaintiffs' reporting in this matter are women, that Plaintiff Wheeler has a long track record of advocating for the North Carolina General Assembly's passing the "Equal Rights Amendment" (ERA), and that American Muckrakers PAC, Inc. has published stories calling out men (*e.g.* Representative Madison Cawthorn of North Carolina) as well as women when the facts show that they are unfit for elected office.

2. Defendant falsely claims that Plaintiffs published a statement saying Defendant Boebert is a "meth addict". Plaintiff Wheeler never uttered that phrase and Plaintiff American Muckrakers never published it. Wheeler's sources told him and he reported the Defendant, "used illegal drugs, including meth".

3. Defendant falsely claims that Plaintiff Wheeler called her a "stripper" and a "prostitute". Again, Plaintiffs never published statements calling Defendant either of those. Plaintiff was told she worked as an "unregistered paid escort" and that is what was published.

5. Defendant falsely claims that, "*Mr. Wheeler did not respond to Rep. Boebert's defense of herself with his own counter speech. Rather, he responded with this suit, the aim of which is to suppress political activity and debate*." Plaintiffs made multiple attempts to appear on Sean Hannity's radio and TV shows to refute Defendant's defamations of him, corresponding with show producer Dante Mazza, Sean Hannity, Suzzane Scott, Chief Executive Officer of Fox News, and others requesting an opportunity to refute Defendant's continual defamatory remarks. All of these efforts were ignored other than a Fox attorney sending a letter requesting Wheeler stop asking. In addition, Wheeler vociferously defended himself and continues to do so today via social media, podcasts, press releases, and other writings. Wheeler has never attempted to suppress Defendant's speech and debate. As a matter of fact, Wheeler has invited Defendant to have a public debate, moderated by Sean Hannity, to which she never responded.

6. Defendant's Response makes Defendant Wheeler sound like he purposely evaded service as if he had something to hide or was in hiding. This is false.

7. Defendant claims, "Plaintiffs continue to admit that one of their sources told Plaintiffs her story was totally made up". This is false. Plaintiffs do not and have never admitted Ms. Tory Hooper's story was made up.

WHEREFORE, Plaintiffs respectfully request their motion for leave to amend pursuant to Rule 15 be granted.

Respectfully submitted this November 30, 2023,

By:   */s Dan Ernst*
Dan Ernst, Esq. Colo Bar #53438
ERNST LEGAL GROUP LLC
217 E. 7th Ave.
Denver, CO 80203

7

(720) 798-3667
Dan@ernstlegalgroup.com
*Attorneys for Plaintiffs*

8