IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01463-RMR-KAS

AMERICAN MUCKRAKERS PAC, INC., a foreign entity, and
DAVID B. WHEELER, an individual, North Carolina resident,

      Plaintiffs,

v.

LAUREN OPAL BOEBERT, and individual and Colorado resident, and
JOHN DOES (1-25),

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on **Plaintiffs' Motion for Leave to Amend Complaint** [#35][1] (the "Motion to Amend"). Defendant filed a Response [#37] in opposition, and Plaintiffs filed a Reply [#42]. Previously, Defendant had filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and/or Special Motion to Dismiss under Colorado's Anti-SLAPP Statute [#15] (the "Special Motion to Dismiss"). Plaintiffs filed a Response [#32] in opposition, and on October 5, 2023, the Court held a motions hearing and took the Special Motion to Dismiss [#15] under advisement. *See Minute Entry* [#34]. On February 21, 2024, the Court denied Defendant's Special Motion to Dismiss [#15] without prejudice but indicated that, to the extent necessary, it would consider arguments Defendant raised in her Special Motion to Dismiss [#15] as part of its analysis of the

---

[1] "[#35]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Motion to Amend [#35]. *See Minute Order* [#43]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion to Amend [#35] be **GRANTED IN PART** and **DENIED IN PART**.

<h1 style="text-align:center">I. Background[2]</h1>

## A.   Plaintiff's Reporting on Defendant

Plaintiff David Wheeler is a journalist, and Defendant American Muckrakers PAC, Inc., is a federally regulated political action committee. *Proposed Am. Compl.* [#35-2] at 2. Defendant Lauren Boebert is the United States Representative for Colorado's Third Congressional District. *Id.*, ¶ 1.

In the summer of 2022, Plaintiffs published "news stories about (1) Defendant's use of illegal drugs including methamphetamine, (2) her abortions, and (3) work as a paid escort." *Id.* at 2. For example, on or around June 14, 2022, Plaintiffs posted a press release on their website asserting, among other things, that Defendant had two abortions; was driving an ATV in Moab and "had a serious wreck with her son in the back," causing

---

[2] Unless otherwise stated, the facts in this section come from Plaintiff's Proposed Amended Complaint [#35-2]. To the extent the Court examines futility of amendment, it typically "analyzes a motion to amend through a motion-to-dismiss lens: It takes all 'well-pleaded facts' as true but need not consider '[t]hreadbare recitals of the elements,' 'mere conclusory statements,' and 'legal conclusion[s] couched as fact.'" *Cottonwood Acres, LLC v. First Am. Title Ins. Co.*, No. 2:22-cv-00680-TC-DBP, 2023 WL 4548076, at *1 (D. Utah July 14, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)) (alterations in original); *Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2020 WL 9432879, at *3 (D. Colo. May 21, 2020) (allowing amendment to allege exemplary damages because, "taken as true, [the] allegations state facts sufficient to support . . . exemplary damages"). The Court has also considered certain exhibits attached to Plaintiffs' complaint, because the "motion-to-dismiss lens" allows the Court to "consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Cottonwood Acres*, 2023 WL 4548076, at *1; *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Finally, to the extent the Court cites other evidence in Section III of this Recommendation, the Court does so to the extent necessary to analyze Plaintiffs' claims under Colorado's anti-SLAPP statute.

injury to her sister-in-law; did not report the ATV accident and worked to cover it up; and uses donor money to pay taxes and restaurant rent. *Pl.'s Ex. C1 – Am. Muckrakers' Press Release* [#6],[3] at 2.

These stories were based on information which several individuals had provided to Plaintiffs, including Cindy Lee O'Brien; Judy Biedenback; Jessica Spaulding; Joshua Bartlett; and Tobi Hooper. *Proposed Am. Compl.* [#35-2], ¶¶ 10, 23. Ms. Hooper provided Plaintiffs with information about the ATV accident via a phone conversation and a text message conversation with Plaintiff Wheeler. *Id.*, ¶¶ 10, 32. During the text conversation, Ms. Hooper sarcastically stated that her account was "totally made up." *Id.*, ¶ 32.

Plaintiffs retained copies of communications and records of phone calls with their sources, and they published much of that material on their website. *Id.*, ¶¶ 30-32. Both the recorded phone call and text messages with Ms. Hooper were made available on Plaintiffs' website on or around June 10, 2022. *Id.*, ¶ 33.

## B.     Defendant's Public Statements

Plaintiff's Complaint identifies[4] six allegedly defamatory statements ("Defendant's Public Statements"):

---

[3] [#6] is a flash drive of conventionally submitted materials, which range from "Exhibit A – NC Case Filings" to "Exhibit T – Boebert Wheeler Defamation media search." Because these exhibits are not court-stamped, the Court refers to them according to the following convention (by way of example): "*Pl.'s Ex. A – NC Case Filings* [#6], at ##".

[4] Plaintiffs neither pin-cited to particular timestamps within the 40-minute recording of the "Hannity" episode that aired June 16, 2022, nor pin-cited within any of the other 65 exhibits that were attached to their Complaint, which also included hours of audio footage. The Court thus considers only those defamatory statements which Plaintiffs specifically described in the Proposed Amended Complaint [#35-2] because "adoption by reference must be sufficiently direct and explicit for an opposing party to have fair notice of the claims against them." *Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1078 (D.N.M. 2021) (citing *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson Cnty., Mo.*, 747 F.2d 1195, 1198 (8th Cir. 1984); *Security First Bank v. Burlington N. & Santa Fe Ry. Co.*, 213 F. Supp. 2d 1087, 1093 (D. Neb. 2002)); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 462 (E.D.N.Y. 2007) (deeming invalid

1. **Statement One:** On June 16, 2022, Defendant appeared on "The Sean Hannity Show" ("Hannity") to discuss Plaintiffs' news stories. In part, she said: "This man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway." *Proposed Am. Compl.* [#35-2], ¶ 8; *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 5:51-6:01.

2. **Statement Two:** In the same June 16, 2022 interview, Defendant said that "[t]here is no evidence to back any of their claims. [. . .] I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit."[5] *Proposed Am. Compl.* [#35-2], ¶ 8; *Pl.'s Ex. B – "Hannity", June 16, Hour 3* [#6], at 3:59-4:49.

3. **Statement Three:** "[T]his is what people hate about politics. They hate the lies and they hate the personal destruction. This is very damaging, and that is why I'm going after this guy personally and his group with the full force of the law. I am not holding

---

a plaintiff's attempt to incorporate by reference hundreds of pages of exhibits into an amended complaint because the "failure to specifically identify which portions of the . . . exhibits [the plaintiff] intends to incorporate . . . makes it impossible for the [c]ourt or the defendants to ascertain the nature and extent of the incorporation"); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[5] The Court added ellipses because Plaintiff's quote omitted several sentences from the "Hannity" episode without indicating that gap. *Proposed Am. Compl.* [#35-2], ¶ 8. The full excerpt is as follows: "There is no evidence to back up any of their claims, and it's really a shame that I have to come on your show and defend myself from such baseless and horrific allegations. When I decided to run for office, I knew that I'd take shots from the squad, the left, and even RINOs in my own party, but never, Sean, in my wildest dreams did I believe that some liberal hack could say that I was an escort—licensed or unlicensed, I don't care—say that I had two abortions, say that I was a meth addict. All totally false, and with zero evidence that, and it even trended number one on Twitter and would be written up by reckless publications later. So, I'm going to defend myself, defend my name, defend my family, and I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit." *Pl.'s Ex. B – "Hannity", June 16, Hour 3* [#6], at 3:59-4:49. The omitted sentences do not change the Court's analysis, but their omission without indication is curious. *Cf.* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION, 86 (21st ed. 2020) ("Omission of a word or words is generally indicated by the insertion of an ellipsis[.]").

back, and I want to make sure that this never happens to anyone else again."

*Proposed Am. Compl.* [#35-2], ¶ 43; *Pl.'s Ex. J1 – Kerr Article* [#6] at 2 (Defendant's

June 15, 2022 statement to Washington Examiner reporter Andrew Kerr).

4. **Statement Four:**

> Right, Tomi. These are all lies and isn't it interesting that this is
> coming from the party of believe all women? I'm not the only one this
> has happened to. We know that they have lied about you as you have
> stated. They lied about Sarah Palin and nearly every conservative
> fighter. Heck, even Mother Jones, a far-left leaning publication called
> these sexist and disgusting claims. [. . .] I've never had two abortions.
> [. . .][6] I've never been an escort. I've never been a drug addict as
> they claim or stripper or whatever else they want to add to that and
> over the [last] few days verifiable facts will be released that proves
> what I said that proves that these allegations are absolutely false.
> But here's what's so sad Tomi. The damage has been done. These
> allegations trended number one on Twitter. When Mr. Wheeler and
> this PAC released some of their allegations they knew them to be
> false. Their source told them in a text, and I quote, this story is made
> up. When they said I was some woman in lingerie in a bed that photo
> was proven not to be me, and these sick hacks still continue to
> publish the photo and continue to double down saying that it was me
> so I'm not taking this quietly. I won't allow this illegal behavior to
> continue to happen against myself and I certainly never want it to
> happen to anyone else, and that's why I'm moving forward on a
> lawsuit to sue this PAC. They lied about me and they knew it was lies
> and that is absolutely illegal, it's just like a bully on a playground, uh
> when they can't win they punch you in the face but uh I'm fighting
> back.

*Proposed Am. Compl.* [#35-2], ¶ 47; *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at

6:05-7:46 (Defendant's June 22, 2022 statement on the "Tomi Lahren is Fearless"

TV show).

---

[6] Again, the block quote in Plaintiffs' Proposed Amended Complaint [#35-2] omitted two sentences of Defendant's statement with no indication of those gaps. *Compare Proposed Am. Compl.* [#35-2], ¶ 47, *with Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 6:26-6:34 (Defendant stating, "Conservative women are targets of the mainstream media but that makes us so much stronger. I've never had two abortions. I've never had any abortions."). These omitted sentences do not substantively change the Court's analysis.

5. **Statement Five:** "This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated. The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties." *Proposed Am. Compl.* [#35-2], ¶ 53; *Pl.'s Ex. J6 – Keene Article* [#6], at 1 (Defendant's June 15, 2022 statement to Fox News reporter Houston Keene).

Defendant allegedly repeated "this malicious defamation of Plaintiffs" to various publications. *Proposed Am. Compl.* [#35-2], ¶ 54. In particular, she repeated the following portion of Statement Four: "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false. Their source told them in a text, and I quote, this story is made up." *Id.* (citing eight separate exhibits).

Defendant, through counsel, also threatened donors to Plaintiff American Muckrakers PAC, Inc., in a June 17, 2022 statement to the media: "Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation." *Id.*, ¶ 64; *Pl.'s Ex. J4 – Richardson Article* [#6], at 5.[7]

Between June 15, 2022, and July 25, 2022, there were at least 42 unique news articles in which Defendant claimed she was going to sue Plaintiffs for defamation and refer Plaintiff David Wheeler for criminal prosecution. *Id.*, ¶ 46. Plaintiff Wheeler received

---

[7] The Court did not examine this statement under the defamation analysis because, by Plaintiffs' own admission, it was not a statement made by Defendant but by her counsel, who is not a named Defendant in this case. *Proposed Am. Compl.* [#35-2], ¶ 64. However, the Court finds this statement relevant to Plaintiffs' other claims.

numerous emails, text messages, and verbal death threats. *Id.*, ¶ 48. Defendant never produced any evidence of Plaintiff Wheeler's alleged criminality. *Id.*, ¶ 55. Defendant's alleged defamatory statements and threats of pursuing litigation or pushing criminal charges have caused significant reductions in donations to Plaintiff American Muckrakers, PAC, Inc. *Id.*, ¶ 58. Following the alleged defamation on June 16, 2022, donations to the PAC dropped from an average of more than $20,000 per month between April 2022 and June 2022 to an average of $1,281.00 between July 2022 and September 2022. *Id.*, ¶¶ 58, 70-73. After Defendant expressed her intent to sue donors to Plaintiff American Muckrakers PAC, Inc., at least four named, individual donors specifically cited their fear of liability as the reason they were ceasing donations. *Id.*, ¶ 74. Plaintiff Wheeler's salary, drawn from Plaintiff American Muckrakers PAC, Inc., dropped from $5,375.00 per month from July 2021 through June 2022, to $2,700.00 per month from July 2022 through September 2022. *Id.*, ¶¶ 76-77.

Defendant has not sued any of Plaintiffs' donors, but she initiated a court action to obtain a temporary restraining order against Plaintiffs. *Id.*, ¶ 75; *id.* at 21.[8] Defendant allegedly delayed the proceeding and then abandoned it when it came time to present evidence. *Id.* Plaintiffs were deterred from reporting on Defendant under threat of contempt of court, and due to Defendants' allegations against Plaintiff Wheeler, a co-founder of Plaintiff American Muckrakers PAC, Inc., resigned from the voluntary board

---

[8] The paragraph numbering in the Proposed Amended Complaint goes from ¶ 104 at the end of the Fifth Cause of Action to ¶ 30 at the beginning of the Sixth Cause of Action. *See Proposed Am. Compl.* [#35-2] at 21. To avoid confusion, the Court cites to page numbers when discussing the allegations in the Sixth Cause of Action.

and asked to be removed from its materials to avoid association with Defendants' allegations. *Id.* at 21.

Plaintiffs assert six claims for relief against Defendant: (1) defamation; (2) trade libel; (3) tortious interference with contract; (4) tortious interference with prospective advantage; (5) civil conspiracy[9,10]; and (6) abuse of process. *Id.*, ¶¶ 79-104; *id.* at 21-22.

## II. Standard of Review

### A.     Rule 15(a)

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with the purpose of Rule 15 which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within the court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

---

[9] Claim 5 is also asserted against "John Does 1-25 to be named after discovery"). *Id.* at 20.

[10] Because a civil conspiracy claim (Claim 5) is a derivative action and, therefore, depends on the viability of at least one of Plaintiffs' other asserted claims, the Court will evaluate Claim 5 last. *See Colorado Community Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. App. 2013).

However, "[a] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason[.]" *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997); *see also Long v. United States*, 660 F. Supp. 3d 1148, 1152 (D. Utah 2023) (denying leave to amend where the "proposed amended complaint is subject to dismissal for lack of subject matter jurisdiction").

## B.     Rule 12(b)(6)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

9

C.      **Anti-SLAPP Statute**

In 2019, Colorado's anti-SLAPP statute, Colo. Rev. Stat. § 13-20-1101, went into effect. It provides, in part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim." Colo. Rev. Stat. § 13-20-1101(3)(a). The statute defines an "[a]ct in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue" to include: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest", and "[a]ny other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Colo. Rev. Stat. § 13-20-1101(2)(a)(III)-(IV).

Because Colorado's anti-SLAPP statute is barely five years old, relevant state and federal case law is developing.[11] Colorado courts often "look to California case law for guidance because Colorado's law "closely resembles California's anti-SLAPP statute."

---

[11] The Court could find only eight Colorado appellate court opinions interpreting the statute, all within the last two years. *See Coomer v. Donald J. Trump for President*, Nos. 22CA0843, 22CA0879, ___ P.3d ___, 2024 COA 35 (Colo. App. Apr. 11, 2024); *Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 544 P.3d 693 (Colo. App. 2023); *Gonzales v. Hushen*, 540 P.3d 1268 (Colo. App. 2023); *Anderson v. Senthilnathan*, 540 P.3d 1248 (Colo. App. 2023); *Rosenblum v. Budd*, 538 P.3d 354 (Colo. App. 2023); *Creekside Endodontics, LLC v. Sullivan*, 527 P.3d 424 (Colo. App. 2022); *Salazar v. Pub. Trust Inst.*, 522 P.3d 242 (Colo. App. 2022); *L.S.S. v. S.A.P.*, 523 P.3d 1280 (Colo. App. 2022).

*L.S.S. v. S.A.P.*, 523 P.3d 1280, 1285 (Colo. App. 2022); *see also Moreau v. U.S. Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1128 (D. Colo. 2022).

The Court joins others in this District in holding that Colorado's anti-SLAPP law applies in federal court. *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1199 (D. Colo. 2023) (*Coomer I*), *appeal dismissed*, 98 F.4th 1320 (10th Cir. Apr. 23, 2024) (*Coomer II*); *Moreau*, 641 F. Supp. 3d at 1132-33. In doing so, the Court recognizes that the applicability of Colorado's anti-SLAPP statute in federal court remains an open question in this Circuit. *Coomer II*, 98 F.4th at 1324 n.5 (noting that the plaintiff-appellee had not raised an *Erie*[12] challenge to the applicability of Colorado's anti-SLAPP statute, but observing that the Eleventh, Seventh, and D.C. circuits have held that state anti-SLAPP laws do not apply in federal court) (citations omitted); *Double Diamond Distrib. Ltd. v. Crocs, Inc.*, No. 23-cv-01790-PAB-KAS, 2024 WL 1051951, at *12 (D. Colo. Mar. 11, 2024) (noting lack of clarity as to Anti-SLAPP statute's applicability in federal courts); *cf. Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) (affirming district court's order denying application of New Mexico's anti-SLAPP statute in a federal diversity action after conducting an *Erie* analysis).

Under the anti-SLAPP statute, the Court must first determine whether Defendant's alleged conduct and communications were "in connection with a public issue or an issue of public interest." *Coomer I*, 659 F. Supp. 3d at 1199-1200. If they are, then at step two, "Plaintiff must go beyond his pleadings and present evidence that satisfies the Court that he is reasonably likely to prevail on the merits of his claims." *Id.* at 1200 (citing *L.S.S.*, 523 P.3d at 1285-86). Thus, the anti-SLAPP special motion procedure does not fit neatly

---

[12] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

into either Rule 12 or Rule 56. *Id.* at 1203 (citing *Moreau*, 659 F. Supp. 3d at 1133-34). The Court "must determine whether the basis of an anti-SLAPP motion is legal or factual"; if it is a legal challenge, the court analyzes it under a Rule 12 standard, but if it is a factual challenge, the court analyzes it under a Rule 56 standard. *Id.* (citing *Moreau*, 659 F. Supp. 3d at 1133-34).

Courts interpreting California's anti-SLAPP statute have held that "what [the plaintiff] calls its claims is not actually important" and that "the anti-SLAPP statute should be broadly construed." *X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, ___ F. Supp. 3d ____, 2024 WL 1246318, at *9 (N.D. Cal. Mar. 25, 2024) (citing *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494 (Cal. Ct. App. 2003)). Therefore, "a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as 'a garden variety breach of contract [or] fraud claim' when in fact the liability claim is based on protected speech or conduct." *Id.* (collecting cases); *see also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56-57 (1988) (holding that a public figure plaintiff cannot prevail under the tort theory of intentional infliction of emotional distress when the underlying conduct is protected speech).

### III. Analysis

At the outset, the Court distinguishes the three categories of statements frequently conflated by the parties. *First*, Plaintiffs allege that Defendant defamed them by accusing them of lying and publishing allegations they knew to be false. *See, e.g.*, *Pl.'s Ex. B – "Hannity", June 16, Hour 3* [#6] at 5:51-6:01 ("This man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway."). *Second*, Plaintiffs allege that Defendant threatened to take legal action

against them. *See, e.g.*, *id.* at 3:59-4:49 ("There is no evidence to back up their claims . . . I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit."). *Finally*, Plaintiffs allege that Defendant and her counsel threatened legal action against donors. *See, e.g.*, *Pl.'s Ex. J4 – Richardson Article* [#6], at 5 ("Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation."); *Pl.'s Ex. J6 – Keene Article* [#6], at 1 ("'This will be a costly miscalculation for Muckrakers, Wheeler, and Muckrakers' donors,' [Defendant's] attorney added."). For her part, Defendant argues that Plaintiffs' complaint "fails to allege that [Defendant] subjectively knew her statements to be false" and that, because Plaintiffs have shown no actionable defamatory statements, *all* their claims must fail. *Special Motion to Dismiss* [#15] at 12, 20.

However, the Court finds material differences among these three categories of statements. While the first category of statements (Defendant accusing Plaintiffs of lying) may be evaluated under the rubric of defamation, Defendant's threats of legal action are not susceptible to a defamatory meaning. A threat to bring legal action is not a statement which "contains or implies a *verifiable fact about the plaintiff*" and, at the time it is made, such a threat is not reasonably "susceptible to being understood as an assertion of actual fact." *NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 10 (Colo. 1994) (discussing standard set forth in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)) (emphasis added). Moreover, even if such threat is susceptible to defamatory interpretation, "statements made before or during a judicial proceeding are privileged so

long as they are related to the proceeding, and claims sounding in defamation for such statements are barred." *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, No. 21-1309, 2022 WL 2223141, at *3 (10th Cir. June 21, 2022) (collecting Colorado cases).

The Court also distinguishes between Defendant's (and her counsel's) threats of litigation against Plaintiffs and similar threats against donors. Under Colorado law, "for the litigation privilege to attach to an attorney's prelitigation statement, the litigation must not only be related to the statement but must be contemplated in good faith." *Begley v. Ireson*, 399 P.3d 777, 782 (Colo. App. 2017); *see also Merrick v. Burns, Wall, Smith & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. 2001) ("Communications preliminary to a judicial proceeding are protected by absolute immunity only if they have some relation to a proceeding that is actually contemplated in good faith.").

The parties do not dispute that Defendant took legal action against Plaintiffs, in the form of a proceeding seeking a temporary restraining order, and Defendant ultimately obtained the requested temporary civil protection order, which suggests that the litigation was not pursued in bad faith. *See Response* [#37] at 5-6; *Temporary Protection Order* [#37-2]; *Proposed Am. Compl.* [#35-2], at 21. Here, the Court finds that Defendant's and her counsel's threats of litigation *against Plaintiffs* are protected by the litigation privilege, because she ultimately filed suit against Plaintiff Wheeler. However, Defendant apparently has not pursued legal action against any of Plaintiff American Muckrakers' donors. *Proposed Am. Compl.* [#35-2], ¶ 75. Neither of these threats of litigation can support a claim for defamation, but they may be otherwise actionable if the litigation was not contemplated in good faith. *Merrick*, 43 P.3d at 714; *Begley*, 399 P.3d at 781.

## A.      Anti-SLAPP Step One

Defendant suggests that her alleged statements fall within the scope of the anti-SLAPP statute, while Plaintiffs argue that this suit is not "targeting [Defendant's] constitutionally privileged free speech, [so] the 'first prong' of the analysis is not satisfied[.]" *See, e.g., Special Motion to Dismiss* [#15] at 9-10; *Response* [#32] at 8. The Court agrees with Defendant.

The Court finds that each of Plaintiff's five identified defamatory statements were "act[s] in furtherance of [Defendant's] right of petition or free speech under the United States constitution or the state constitution in connection with a public issue"; namely, they were "written and oral statement[s] made in a place open to the public or a public forum in connection with an issue of public interest" and are "communication[s] in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." Colo. Rev. Stat. § 13-20-1101(2)(a)(III), (IV).

First, the written and oral statements were made in a place open to the public or a public forum because they were made on a radio show ("The Sean Hannity Show"), a podcast ("Tomi Lahren is Fearless"), and in *Washington Examiner* and FoxNews.com web articles, which were accessible to the public. *See Pl's Exs. B, J1, J6, K* [#6]. Many courts have deemed radio shows, podcasts, and websites places open to the public or public fora for anti-SLAPP purposes. *See, e.g., Gallager v. Philipps*, 563 F. Supp.3d 1048, 1078 (S.D. Cal. 2021) (finding that articles and podcasts were "made in a place open to the public or a public forum in connection with an issue of public interest" for purposes of California's Anti-SLAPP statute); *Ratner v. Kohler*, No. 17-00542 HG-KSC, 2018 WL 1055528, at *10 (D. Haw. Feb. 26, 2018) (noting that California courts deem publicly

accessible websites "public forums" for anti-SLAPP statute purposes and pointing to the parties' agreement that a post on Facebook was made on an open forum) (citing *Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006); *Wong v. Tai Jing*, 117 Cal.Rptr.3d 747, 759 (Cal. Ct. App. 2010)); *Phoenix Trading, Inc. v. Kayser*, No. C10-0920JLR, 2011 WL 3158416, at *7 (W.D. Wash. July 25, 2011) ("concluding that the news outlets to which [the defendants] made their statements constitute public forums under [Washington's Anti-SLAPP statute); *Castello v. City of Seattle*, No. C10-1457MJP, 2010 WL 4857022, at *6 (W.D. Wash. Nov. 22, 2010) (deeming a local news broadcast on a major television network a public forum under Washington's Anti-SLAPP statute); *Higher Balance, LLC v. Quantum Future Group, Inc.*, No. 08-233-HA, 2008 WL 5281487, at *3 (D. Or. 2008) (concluding that "[w]ebsite forum pages allowing users to read and post comments free of charge constitute a public forum under [Oregon's] anti-SLAPP statute"); *see also Annette F. v. Sharon S.*, 15 Cal. Rptr.3d 100, 110 (Cal. Ct. App. 2004) (reasoning that "a news publication is a 'public forum' within the meaning of [California's] ant-SLAPP statute if it is a vehicle for discussion of public issues and it is distributed to a large and interested community"); *Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr. 2d 108, 115 (Cal. Ct. App. 2002) (deeming a talk-radio show a public forum); *Damon v. Ocean Hills Journalism Club*, 102 Cal.Rptr.2d 205, 209-12 (Cal. Ct. App. 2000) (defining a "public forum" as "a place that is open to the public where information is freely exchanged" and deeming as public fora a televised and open homeowners' association board meeting and a newsletter sent to 3,000 people).

Second, without question, elected public officials are matters of public concern. *New York Times v. Sullivan*, 376 U.S. 254, 266 (1964) (characterizing publication

criticizing an elected commissioner of the Montgomery, Alabama, in the midst of the Civil Rights movement as "communicat[ing] information, express[ing] opinion, recit[ing] grievances, protest[ing] claimed abuses, and [seeking] financial support on behalf of a movement whose existence and objectives are *matters of the highest public interest and concern*") (emphasis added); *cf. Pl.'s Ex. C1 – Am. Muckrakers' Press Release* [#6] at 2 ("Lauren Opal Boebert is as big of a hypocrite as Madison Cawthorn . . . . Our coalition of Republicans, Democrats, and Unaffiliated voters are pleading with all voters in Colorado's 3rd District to take a good long look at Lauren Boebert and what she does, not what she says[.]"). The same constitutional privileges set forth in *New York Times* also "apply to criticism of 'public figures' as well as 'public officials,'" and to "nonpublic persons 'who are nevertheless intimately involved in the resolution of important public questions[.]'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990) (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 336-37 (1974)).

Here, Defendant's five allegedly defamatory statements arose in response to Plaintiffs' published accusations about her, a United States Representative running for reelection. The allegations about Defendant's alleged abortions, ATV accident, drug use, misuse of donor funds, and escort history are explicitly framed as charges of hypocrisy. *See Pl.'s Ex. C1 – Am. Muckrakers' Press Release* [#6] at 2. They are followed by a call on Colorado voters to "agree with us that Lauren Boebert doesn't deserve to represent the voters of Colorado," advocating for readers to vote against her in the 2022 election. *Id.* Defendant's allegedly defamatory statements were certainly made in connection with Plaintiffs' published statements about her which, she claims, are all lies. *Proposed Am. Compl.* [#35-2], ¶¶ 1 ("allegations" and "claims"), 47 ("allegations" and "lies"), 53 ("false

statements"). The Court concludes without difficulty that Defendant's allegedly defamatory statements fall under two categories of anti-SLAPP protected speech: "written and oral statement[s] made in a place open to the public or a public forum in connection with an issue of public interest" and "communication[s] in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." Colo. Rev. Stat. § 13-20-1101(2)(a)(III), (IV).

The Court also finds that Defendant's threats of litigation and her litigation conduct fall within the scope of the anti-SLAPP statute, *i.e.*, Colo. Rev. Stat. § 13-20-1101(2)(a)(IV) ("other conduct or communication in furtherance of the exercise of the constitutional right of petition . . . in connection with a public issue or an issue of public interest."). Courts have construed litigation as falling within parties' "right of petition . . . under the United States Constitution," Colo. Rev. Stat. § 13-20-1101(2)(a). *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 611-12 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right to petition.") (citations omitted); *see also Mendoza v. Gramse*, No. D078307, 2022 WL 482566, at *6 (Cal. Ct. App. Feb. 17, 2022) (stating that California's anti-SLAPP provisions concerning oral statements "made in connection with an issue under consideration" by a "judicial body" apply to "not only the filing of litigation or seeking of administrative action, but also communications preparatory to or in anticipation of bringing an action or other official proceeding."); *Key v. Tyler*, 246 Cal. Rptr. 3d 224, 239 (Cal. Ct. App. 2019) (noting that anti-SLAPP statutes serve to protect "the right to petition the government through the courts" from "lawsuits that threaten to chill its exercise"); *Tichinin v. City of Morgan Hill*, 99 Cal. Rptr. 3d 661, 676-679 (Cal. Ct.

App. 2009) (collecting cases that extended constitutional protections to "prelitigation conduct reasonably related to *potential* litigation") (emphasis in original).

The Court therefore finds that the speech and conduct underlying Plaintiffs' claims fall within the scope of Colorado's anti-SLAPP statute. Claim One (defamation), Claim Two (trade libel), and Claim Six (abuse of process) plainly and directly fall within its scope as described above. Claim Three (tortious interference with contract) and Claim Four (tortious interference with prospective advantage) also fall within its scope because the alleged tortious interference is predicated on Defendant's defamation and her threats of litigation. *See Proposed Am. Compl.* [#35-2], ¶ 93 (alleging that "Defendant's interference with the contracts and agreements was achieved through unlawful and improper means, *i.e.*, by defaming Plaintiffs in their professional capacity and integrity"), ¶ 98 (same). Claim Five (civil conspiracy) is a derivative claim which cannot stand absent an underlying tort or underlying unlawful acts. Therefore, because Plaintiffs' other claims all fall within the scope of Colo. Rev. Stat. § 13-20-1101(2)(a), so too does their civil conspiracy claim. *Sterenbuch v. Goss*, 266 P.3d 428, 435 (Colo. App. 2011) ("Civil conspiracy is a derivative cause of action[.]") (cleaned up) (quoting *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003), *overruled on other grounds*, *L.H.M. Corp., TCD v. Martinez*, 499 P.3d 1055-56 (Colo. 2021)).

Because Defendant has met her burden at step one, the Court proceeds to anti-SLAPP's second step to assess whether Plaintiffs have established a reasonable probability that they will prevail on their claims. *L.S.S.*, 523 P.3d at 1285-86; *Coomer I*, 659 F. Supp. 3d at 1198; *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 248 (Colo. App. 2022).

**B.      Anti-SLAPP Step Two and Defamation (Claim One)**

Under Colorado law, in a defamation case involving matters of public concern, a claim must satisfy six elements: (1) a defamatory statement; (2) that was materially false; (3) concerning the plaintiff(s); (4) published to a third party; (5) with actual malice; and (6) that caused actual or special damages. *Coomer I*, 659 F. Supp. 3d at 1204 (citing *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017); *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013)).

**1.      First Element: Defamatory Statements**

In Colorado, defamation is "a communication that holds an individual up to contempt or ridicule thereby causing him or her to incur injury or damage." *Zueger v. Goss*, 343 P.3d 1028, 1033 (Colo. App. 2014) (citing *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994)); *see also McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1125 (D. Colo. 2016) (stating, "[a] statement may be defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'") (quoting *Burns v. McGraw-Hill Broad. Co., Inc.*, 659 P.2d 1351, 1357 (Colo. 1983)). A defamatory statement must "contain[ ] or impl[y] a verifiable fact about the plaintiff" and must be reasonably "susceptible to being understood as an assertion of actual fact." *Zueger*, 343 P.3d at 1034 (citing *NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 10 (Colo. 1994)). Statements that allege criminal activity or serious sexual misconduct, or which impute "a matter incompatible with the individual's business, trade, profession, or office," are defamatory *per se. Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). The meaning of allegedly defamatory statements is a matter of law left to the Court and is not a factual allegation

to which it must defer. *Fry*, 408 P.3d at 849. The Court may properly rely on plain and ordinary meanings of the allegedly defamatory words. *Id.* at 850.

Regarding the first element, the Court finds that at least *some* of the five Defendant's Public Statements described above are defamatory. In **Statement One** on the June 16, 2022 episode of "the Sean Hannity Show", Defendant said, "[t]his man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 5:51-6:01. This statement contains a verifiable assertion of fact about Plaintiff Wheeler: that he was told by his source that one of his allegations was made up before he released it. *Zueger*, 343 P.3d at 1034. The plain and ordinary meaning of these words is clear: that Plaintiff Wheeler's source told him that one of his allegations was fabricated or false, but he published it anyway. This statement is reasonably susceptible to being understood as an assertion of actual fact, and the plain meaning infers that Plaintiff Wheeler was acting dishonestly, in a manner inconsistent with his profession as a journalist and news publisher. *McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008). This inference is incompatible with Plaintiff Wheeler's profession as a journalist; thus, the statement is defamatory *per se*.

The first sentence of **Statement Two** is also defamatory: "There is no evidence to back up any of their claims." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 3:59-4:02. This statement also contains a verifiable assertion of fact and is reasonably susceptible to being understood as an assertion of actual fact about Plaintiffs: that they published claims about Defendant with no evidence to support them. *Zueger*, 343 P.3d at 1034. The plain and ordinary meaning of these words is clear: that Plaintiffs fabricated claims without

any evidence, then published them. This statement infers that Plaintiffs were acting dishonestly in a manner inconsistent with their profession as a journalist and news source. *McIntyre*, 194 P.3d at 524. Therefore, this first part of Statement Two is defamatory *per se*.

However, the remainder of *Statement Two* is not defamatory: "I'm taking legal action against this guy, David Wheeler, and Muckrakers, and we're moving forward with a lawsuit." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 4:43-49. This statement does not contain or imply a verifiable fact about Plaintiffs—instead, it indicates Defendant's intention to file a lawsuit and it is protected by the litigation privilege. *See Key*, 246 Cal. Rptr. 3d at 239 (Cal. Ct. App. 2019) (noting that anti-SLAPP statutes protect the right to petition the government, including courts); *Tichinin*, 99 Cal. Rptr. 3d at 676-679 (Cal. Ct. App. 2009) (discussing pre-litigation conduct in the anti-SLAPP context); *see also Vivos Therapeutics, Inc.*, 2022 WL 2223141, at *3 (holding that "statements made before . . . a judicial proceeding are privileged [and protected from defamation claims] so long as they are related to the proceeding").

The Court also finds that **Statement Three** is not defamatory: "[T]his is what people hate about politics. They hate the lies and they hate the personal destruction. This is very damaging, and that is why I'm going after this guy personally and his group with the full force of the law. I am not holding back, and I want to make sure that this never happens to anyone else again." *Pl.'s Ex. J1 – Kerr Article* [#6] at 2. This statement does not contain or imply a verifiable fact about Plaintiffs. *Zueger*, 343 P.3d at 1034. Instead, its plain and ordinary meaning conveys that people dislike the lies and personal attacks that are endemic to politics, along with a statement of Defendant's intention to file a

lawsuit against Plaintiff, which is, as discussed above, is protected by the litigation privilege.

Next, the Court finds that only two sentences within **Statement Four** are defamatory: "They lied about me, and they knew it was lies and that is absolutely illegal," and, "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false. Their source told them in a text, and I quote, this story is made up." *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 7:00-11, 7:36-41. Both these statements contain verifiable facts and are reasonably susceptible to being understood as assertions of actual fact about Plaintiffs: that they lied about Defendant and knew they were lying, and that they knew the allegations to be false when they published them because a source told them that the story was made up. *Zueger*, 343 P.3d at 1034. This is defamatory *per se* because it infers that Plaintiffs were acting dishonestly in a manner inconsistent with their profession as a journalist and news publisher. *McIntyre*, 194 P.3d at 524. The remainder of **Statement Four** comprises flat denials of the specific allegations (e.g., "I've never had two abortions. I've never been an escort."), statements about a perceived double standard for "conservative fighter" women, and veiled and direct threats of litigation. *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 6:06-7:46. These other statements do not imply or contain any verifiable facts about Plaintiffs because they simply deny the allegations *about Defendant*. In this statement, Defendant also states her intention to file a lawsuit, which, as discussed, is not defamatory and is protected by the litigation privilege.

Finally, only the first sentence of **Statement Five** is defamatory: "This political committee, funded by far-left Democrat donors and run by two left-wing political

operatives, published pages of false statements knowing they were completely fabricated. The law on this type of defamation is clear and this conduct will be subject to civil and criminal penalties." *Pl.'s Ex. J6 – Keene Article* [#6], at 1. The first sentence contains a verifiable assertion of fact and is reasonably susceptible to being understood as an assertion of actual fact about Plaintiffs: that they published false statements while knowing they were made up. *Zueger*, 343 P.3d at 1034. The plain and ordinary meaning of these words is clear: that Plaintiffs fabricated their claims and published them anyway, with actual malice. This is defamatory *per se* because the words infer that Plaintiffs were acting dishonestly in a manner inconsistent with their profession as a journalist and news publisher and would infer that Plaintiffs have engaged in defamation of a public figure. *McIntyre*, 194 P.3d at 524. However, the remainder of **Statement Five** is not defamatory because it does not contain a verifiable fact and is not reasonably susceptible to being understood as an assertion of actual fact about Plaintiffs—instead, it contains Defendant's understanding of the law, as well as Defendant's intention to file a lawsuit, which is protected by the litigation privilege.

Therefore, the Court finds that the portions of **Statements One**, **Two**, **Four**, and **Five** discussed above are defamatory, in whole or in part.

### 2.    Second Element: Materially False

To be actionable under Colorado law, an allegedly defamatory statement must contain a material falsehood. *Fry*, 408 P.3d at 854 (citing *Bustos v. A&E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011); *Burns v. McGraw-Hill Broad. Co., Inc.*, 659 P.2d 1351, 1360 (Colo. 1983)). "To qualify as a material falsehood, the challenged statement must be false and likely to cause reasonable people to think significantly less

favorably about the plaintiff than if they knew the whole truth." *Id.* (internal quotation marks omitted) (quoting *Bustos*, 646 F.3d at 765). As a matter of law, "even if some readers understood the published statements as defamatory, they are not actionable where the plain and ordinary meaning of the articles is substantially true." *Id.* at 855 (citing *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004); *Barnett v. Denver Publ'g Co., Inc.*, 36 P.3d 145, 147 (Colo. App. 2001)). Stated differently, while "[t]ruth is a complete defense to defamation," "absolute truth is not required; instead, a defendant need only show substantial truth[.]" *Gordon*, 99 P.3d at 81 (internal quotation marks and citation omitted).

Here, a genuine dispute exists as to whether **Statement One** was materially false or substantially true: "This man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 5:51-6:01. A question of fact exists regarding **Statement One's** material falsity because a factual dispute exists over whether "Tobi Hooper's statement, 'Yeah, I made it all up!', was a sarcastic exclamation made in exasperation with Defendant Boebert's denials of the facts of her ATV accident." *Proposed Am. Compl.* [#35-2], ¶ 11. This factual dispute is inappropriate for resolution under either Rule 12(b)(6) or Rule 56; rather, the trier of fact must resolve this dispute. . *Gordon*, 99 P.3d at 81 (stating, "[d]etermination of the truth of an alleged defamatory statement is a question of fact").

Based on the evidence Plaintiffs have provided, the Court finds that the defamatory part of **Statement Two** is materially false: "There is no evidence to back up any of their claims." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 3:59-4:02. Plaintiffs have identified several sources they relied on in support of their press release about Defendant.

*Proposed Am. Compl.* [#35-2], ¶ 23(a)-(f) (identifying Ms. O'Brien, Ms. Biedenbach, Ms. Spaulding, and Mr. Bartlett as sources), ¶ 10 (referring to source Tobi Hooper). While this evidence may or may not have been reliable, it was evidence; therefore, the "gist" of Defendant's statement is false. *Gordon*, 99 P.3d at 81.

The Court finds that a genuine dispute exists as to whether the first defamatory portion of **Statement Four** was materially false or substantially true: "They lied about me and they knew it was lies and that is absolutely illegal." *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 7:36-41. Because this dispute concerns a question of fact, it should be resolved by the trier of fact; it is inappropriate for resolution under Rule 12(b)(6) or Rule 56. *Gordon*, 99 P.3d at 81. The same analysis applies to the statement, "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false." *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 7:00-05. As with Statement One, a reasonable probability exists that Plaintiffs could demonstrate this statement's material falsity, as they have identified their sources and described the information those sources provided. *Proposed Am. Compl.* [#35-2], ¶ 23.

However, one portion of Defendant's **Statement Four** was substantially true: "Their source told them in a text, and I quote, this story is made up." *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 7:05-11. Plaintiffs admit that source Tobi Hooper told them in a text, "Yeah, I made it all up!" *See Proposed Am. Compl.* [#35-2], ¶¶ 10-11. Plaintiffs characterize Ms. Hooper statement as sarcasm, but the "gist" of this specific statement was not false. *Gordon*, 99 P.3d at 81.

Finally, the Court finds a genuine dispute exists as to the material falsity or substantial truth of the defamatory first sentence of **Statement Five**: "This political

committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated." *Pl.'s Ex. J6 – Keene Article* [#6], at 1. As with the other statements, the trier of fact must resolve this dispute; it is inappropriate for resolution under Rule 12(b)(6) or Rule 56. *Gordon*, 99 P.3d at 81.

In sum, the Court finds that: (1) the first part of **Statement Two** is materially false as a matter of law; and (2) while Plaintiffs have plausibly alleged material falsity of **Statement One** and portions of **Statements Four** and **Five**, the trier of fact must resolve the underlying factual disputes. For clarity, the Court reproduces the statements (the "Remaining Statements") to the extent they satisfy the first two elements of defamation:

**Statement One**: "This man was told by his source that one of his allegations was made-up before he released it. He knew it was false and he moved forward anyway." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 5:51-6:01.

**Statement Two**: "There is no evidence to back up any of their claims." *Pl.'s Exhibit B – "Hannity", June 16, Hour 3* [#6] at 3:59-4:02.

**Statement Four**: "They lied about me, and they knew it was lies and that is absolutely illegal," and "When Mr. Wheeler and this PAC released some of their allegations, they knew them to be false." *Pl.'s Ex. K – Tomi Lahren on FOX* [#6], at 7:00-05, 7:36-41.

**Statement Five**: "This political committee, funded by far-left Democrat donors and run by two left-wing political operatives, published pages of false statements knowing they were completely fabricated." *Pl.'s Ex. J6 – Keene Article* [#6], at 1.

### 3.      Third Element: Concerning Plaintiff

The parties do not dispute that the four Remaining Statements concern Plaintiff Wheeler and/or Plaintiff American Muckrakers PAC, Inc. **Statement One** refers to "this man," i.e., Plaintiff Wheeler. **Statement Two** refers to "their claims", i.e., claims made by both Plaintiffs. **Statement Four** identifies "Mr. Wheeler and this PAC" in connection with "they lied." **Statement Five** refers to "this political committee," i.e., Plaintiff American Muckrakers PAC, Inc. The Court finds the third element is satisfied as to the four Remaining Statements.

### 4.      Fourth Element: Published to a Third Party

There is no dispute that the surviving statements were published to third parties. **Statement One** and **Statement Two** were both made to Sean Hannity and his show's audience. **Statement Four** was made to Tomi Lahren and her show's audience. **Statement Five** was made to journalist Houston Keene and the readers of Mr. Keene's FoxNews.com article. The Court finds the fourth element satisfied as to all the remaining statements.

### 5.      Fifth Element: Actual Malice

Actionable defamation claims arising from criticism of public figures or public officials, or from criticism of "nonpublic persons 'who are nevertheless intimately involved in the resolution of important public questions,'" require a showing that the statement was made with "actual malice." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 336-37 (1974)). "Actual malice" exists when the "defamatory statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Curtis Publ'g Co. v. Butts*, 288 U.S. 130, 162

(1967) (Warren, C.J., concurring) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)); *see also Zueger*, 343 P.3d at 1035 (noting that, if the "plaintiffs were public figures, or the statements matters of public concern, [the] plaintiffs would have been required to prove by *clear and convincing evidence* that [the defendant] made the statements with knowledge that they were false or with reckless disregard of whether they were false or not.") (emphasis added).

Under Fed. R. Civ. P. 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Court notes a tension between Rule 9(b) allowing a plaintiff to plead malice generally and the *Iqbal-Twombly* pleading standard, which requires the Court to discard conclusory allegations when considering the sufficiency of a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Where allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). If "general allegations of actual malice are labeled conclusory," then the plausibility pleading standard "require[s] the libel plaintiff plead facts about the defendant's state of mind that the plaintiff usually has no way of knowing" because "discovery is not available under [*Iqbal-Twombly*] until the 12(b)(6) hurdle is surmounted[.]" Judy M. Cornett, *Pleading Actual Malice in Defamation Actions After Twiqbal: A Circuit Survey*, 17 Nev. L. J. 709, 727, 736 (2017).

As of 2017, "five reported cases from the Circuit Courts of Appeals [had] addressed the sufficiency of allegations of malice in public-figure libel actions after [*Iqbal-Twombly*]" and "[i]n each case, the appellate court affirmed Rule 12 dismissals in favor of the

defendant because the plaintiff's allegation of malice did not meet the plausibility requirement." *Id.* at 717 n.73 (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016); *Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012)).

Although the Tenth Circuit has not joined these other circuits, this tendency raises the question of how a public-issue defamation plaintiff could *ever* plausibly plead actual malice, when the defendant's knowledge or reckless disregard will often be known only by defendant. Because the Federal Rules of Civil Procedure "do [] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," plaintiffs may be required to plead factual allegations supporting actual malice before they have any opportunity to discover those facts. *Iqbal*, 556 U.S. at 678-79. This reading of the federal rules creates an impossible situation for many public-issue plaintiffs.

However, the Court need not resolve this tension because it reads Colorado's anti-SLAPP statute, Colo. Rev. Stat. § 13-20-1101, not as imposing a heightened *pleading* standard on public-issue defamation plaintiffs, but rather imposing a heightened *burden of production* on those plaintiffs: To survive a special motion to dismiss the public-issue plaintiff must go beyond the pleadings and proffer evidence which the Court otherwise could not consider on Rule 12(b)(6) motion to dismiss. Colo. Rev. Stat. § 13-20-1101(3)(a)-(b),(6); *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1286 (Colo. App. 2022) (describing step two of the anti-SLAPP analysis "as a summary judgment-like procedure in which the court reviews the pleadings and the evidence"). Anti-SLAPP statutes are intended to

restrict claims, not broaden them: "the statute facilitates 'the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *X Corp. v. Ctr. For Countering Digit. Hate, Inc.*, __ F. Supp. 3d ___, 2024 WL 1246318, at *6 (quoting *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094 (Cal. 2008)). The Court must determine, based on evidence proffered before general discovery opens, whether the plaintiff has established a reasonable likelihood of prevailing on the claim under a framework which borrows from Rules 12 and 56 but "does not fit neatly into either." *Coomer I*, 659 F. Supp. 3d at 1203; *Moreau*, 641 F. Supp. 3d at 1134.

At least twice in recent months, the Colorado Court of Appeals has clarified the anti-SLAPP statute's heightened burden of production. *Coomer v. Donald J. Trump for President*, Nos. 22CA0843, 22CA0879, 2024 COA 35 (Colo. App. Apr. 11, 2024); *Gonzales v. Hushen*, 540 P.3d 1268, 1288 (Colo. App. 2023). In *Coomer v. Donald J. Trump for President*, a case which arose from false claims that the plaintiff manipulated election results, the Colorado Court of Appeals affirmed a trial court's denial of an anti-SLAPP special motion to dismiss defamation claims where the plaintiff had "presented sufficient evidence at this preliminary stage to establish a reasonable likelihood of showing that [the at-issue] statements were false and that defendants made them with actual malice[.]" 2024 COA 35, ¶ 4. The court clarified that a "plaintiff does not need to prove their case at the anti-SLAPP stage"; rather, "plaintiff's burden is to make 'a prima facie showing' of evidence that—if later presented at trial—is reasonably likely to sustain a favorable judgment." *Id.*, ¶ 76 (citing *L.S.S.*, 523 P.3d at 1288-89) (stating, "the plaintiff must establish a probability that they will be able to produce clear and convincing

evidence of actual malice at trial"). The court further explained that a trial court must "not accept the factual allegations in the complaint as true"; rather, "to defeat an anti-SLAPP motion, the plaintiff generally must go further and present *evidence* establishing a reasonable likelihood of success." *Id.*, ¶ 68 (internal quotation marks and citations omitted). The trial court must then "assess whether the facts in the affidavits [or other evidence] submitted by the plaintiff, if true, establish a reasonable likelihood of proving each claim under the applicable burden of proof." *Id.*, ¶ 63 (internal quotation marks and citation omitted). While a trial court does not accept a plaintiff's allegations as true when deciding an anti-SLAPP motion to dismiss, a court "accept[s] as true the plaintiff's evidence" without weighing the evidence or resolving factual conflicts. *Id.*, ¶¶ 69, 70 (emphasis omitted).

In *Gonzales*, which involved defamation claims arising from a Title IX investigation that led to the plaintiff's expulsion from high school, the court reversed the trial court's determination that the plaintiff failed to show actual malice under the anti-SLAPP framework. *Gonzales*, 540 P.3d at 1288. The plaintiff filed a declaration in which he vehemently denied the Title IX-related allegations and "support[ed] his contentions that defendants made their statements with actual malice" by relying on: inconsistencies in the Title IX allegations; evidence of the defendant daughters' ill will against him; credibility findings made by a judge presiding over an underlying criminal trial; his acquittal; and a Title IX supplement in which defendants had reasserted some but not all allegations. *Id.* The court determined that the plaintiff's claims were sufficient to survive a special motion to dismiss. *Id.* at 1292. The court concluded that a plaintiff "need not establish actual malice at [the motion-to-dismiss] stage of the proceedings to survive an anti-SLAPP

motion. Rather, [the plaintiff] must demonstrate a reasonable probability of proving that, at the time the communications were made, the speakers knew that [he] had not committed sexual misconduct or in fact had 'serious doubt' as to the truth of the sexual misconduct allegations." *Id.* at 1289 (citing *McIntyre*, 194 P.3d at 529). In reaching these conclusions, the court reasoned that the trial court "cannot weigh evidence, resolve conflicting factual claims, or make credibility determinations" but must "accept [the plaintiff's] evidence as true." *Id.* As *Coomer v. Donald J. Trump for President* and *Gonzales* demonstrate, Colorado's anti-SLAPP framework thus avoids the tension between *Iqbal*/*Twombly*, Fed. R. Civ. P. 9(b), and Fed. R. Civ. P. 12(b)(6).[13]

Here, Plaintiff's Proposed Amended Complaint [#35-2] offers only general allegations that Defendant acted with actual malice. She allegedly "intentionally mislead [sic] her audience"; "was aware that Plaintiffs used multiple sources"; "was aware that Plaintiffs' source Tobi Hooper was informing Plaintiffs regarding [Defendant's] drunken ATV accident"; "was aware that Tobi Hooper's statement . . . was a sarcastic exclamation"; "was aware that Tobi Hooper's statements about the ATV accident were

---

[13] The Court acknowledges that this differs from the approach some other federal courts have taken at the motion-to-dismiss stage, which appears to either implicitly or explicitly impose a heightened *pleading* requirement. *See, e.g.*, *Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 2528624, at *6 (D. Colo. Mar. 15, 2023). In *Coomer v. Lindell*, the court stated that at the motion to dismiss stage, the "plaintiff must plead plausible grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Coomer v. Lindell*, 2023 WL 2528624, at *6 (internal quotation marks omitted) (citing *Farmland Partners Inc. v. Rota Fortunae*, No. 18-cv-02351-KLM, 2020 WL 12574993, at *21 (D. Colo. May 15, 2020); *Schatz*, 669 F.3d at 58). In *Farmland Partners*, the court applied a heightened pleading standard but found that the plaintiff had "plausibly pled the actual malice element," *Farmland Partners*, 2020 WL 12574993, at *21. The Court departs from these cases to the extent that they imposed heightened pleading standards for actual malice. As discussed above, the anti-SLAPP framework avoids that problem by imposing a relatively minor *burden of production* on public-figure or public-interest defamation plaintiffs as to actual malice. *See Coomer v. Donald J. Trump for President*, 2024 COA 35, ¶ 87; *L.S.S.*, 523 P.3d at 1288; *Gonzales*, 540 P.3d at 1288; *Coomer I*, 659 F. Supp. 3d 1189, 1200 (D. Colo. 2023).

true"; "intentional[ly] manipulat[ed] . . . a sarcastic comment"; "defamed Plaintiffs with
actual malice – that is, knowing that what she was saying is false"; "seized on Ms.
Hooper's sarcastic remark . . . to make the knowingly false claim"; "purposely
misrepresented"; "used this tactic knowing full-well that she had no basis in law for such
threats of suit"; and "either knew that the challenged statements were false or Defendant
made the statements with reckless disregard as to whether they were false." *Proposed
Am. Compl.* [#35-2], ¶¶ 8-14, 34, 54, 65, 83. Each of these allegations generally asserts
Plaintiff's knowledge or intent, with no added factual detail about Defendant's motive,
diligence, or any ill will she held prior to Plaintiffs' publication of their own accusations
against Defendant.

Plaintiffs allege that they pride themselves in being cautious and thorough in their
reporting, and they discuss their sources and their efforts to verify the stories, but they do
not allege that Defendant knew about those efforts, practices, outreach to sources, or
reputation. *Id.*, ¶¶ 19-31. To the extent they made their sources available on their website,
they do not allege that Defendant saw or reviewed their website or those sources. *Id.*, ¶¶
30-33. To the extent they allege that they tried to clear their name through outreach to
producers and reporters, they do not allege that Defendant was aware of or interfered
with those efforts. *Id.*, ¶¶ 38-40, 45. Finally, though Plaintiffs allege that Plaintiff Wheeler
has offered to send any future stories about Defendant to her counsel before publication,
this does not demonstrate or suggest that Defendant acted with actual malice at the time
she made the allegedly defamatory statements. *Id.*, ¶ 57.

The Court assumes without deciding that Plaintiff's general allegations of actual
malice are sufficiently pleaded under Rule 9(b) and would survive Rule 12(b)(6) dismissal.

However, as discussed above, Plaintiffs must demonstrate a "reasonable probability of proving that, at the time the communications were made, [Defendant] knew" they were false "or in fact had 'serious doubt' as to the truth" of her statements. *Gonzales*, 540 P.3d at 1288.

The Court finds that Plaintiffs have not met their burden at anti-SLAPP's step two as to actual malice under Colo. Rev. Stat. § 13-20-1101(3)(a). Neither the Proposed Amended Complaint [#35-2], the Motion to Amend [#35], nor the evidence attached to the Complaint demonstrate a reasonable probability that Plaintiffs will be able to establish through clear and convincing evidence that Defendant made the allegedly defamatory statements with knowledge or reckless disregard of the statements' falsity or with serious doubt as the statements' truth. *See Coomer I*, 659 F. Supp. 3d at 1205. In addition to the evidence attached to the Complaint, Plaintiff David Wheeler attached an affidavit to his opposition to Defendant's Special Motion to Dismiss [#15]. *See Aff. of Pl. Wheeler* [#32-1]. The Court has reviewed the Affidavit [#32-1] and finds no additional evidence demonstrating or suggesting Defendant made the allegedly defamatory statements with actual malice. The affidavit largely repeats the Complaint's allegations, and the few additional allegations are unsupported.

Therefore, the Court finds that Plaintiffs have not met their burden of production at step two of the anti-SLAPP analysis. They have failed to "go beyond [the] pleadings and present evidence that satisfies the Court that [they are] reasonably likely to prevail on the merits of [their] claims," particularly with respect to defamation's fifth element, *i.e.*, "actual malice." *Coomer I*, 659 F. Supp. 3d at 1200 (citing *L.S.S.*, 523 P.3d at 1285-86). Accordingly, the Court finds that the Proposed Amended Complaint [#35-2] would be futile

to the extent it alleges defamation, because it would be subject to dismissal pursuant to a renewed anti-SLAPP special motion. *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court may properly deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason"). Because Plaintiffs have failed to meet their burden in connection with the "actual malice" element, the Court ends its analysis here and does not address defamation's sixth element, *i.e.*, causation of actual or special damages.

### 6.    Conclusion: Defamation Claim

In sum, at step two of Colorado's anti-SLAPP statute, the Court finds that Plaintiffs have not gone beyond their pleadings to present evidence that they are reasonably likely to prevail on the merits of their defamation claim. Therefore, the Motion to Amend [#35] should be denied as to Claim One on futility grounds because the Proposed Amended Complaint [#35-2] would be subject to dismissal under Colorado's anti-SLAPP statute. Accordingly, the Court **recommends** that leave to amend to allege Claim One (defamation) be **denied**.

## C.    Anti-SLAPP Step Two and Trade Libel (Claim Two)

Under Colorado law, to prevail on an actionable trade libel claim, a plaintiff must prove the following: "(1) a false statement, (2) published to a third party, (3) derogatory to the plaintiff's business in general or its quality, and (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages." *Double Diamond Distrib. Ltd. v. Crocs, Inc.*, No. 23-cv-01790-PAB-KAS, 2024

WL 1051951, at *6 (D. Colo. Mar. 11, 2024) (cleaned up) (internal quotation marks and citation omitted).

In support of Claim Two for trade libel, Plaintiffs assert: (a) Defendant's "challenged statements and written communications are untrue"; (b) "Defendant made the communications knowing they were false or with reckless disregard of their truth"; (c) "Defendants' statements defaming Plaintiffs resulted in pecuniary damage to Plaintiffs"; and (d) "Plaintiffs' business has been significantly damaged in reputation to the extent that loss of future business may be proven." *Proposed Am. Compl.* [#35-2], ¶¶ 85-88. Plaintiffs' trade libel claim arises from the same protected speech underlying Plaintiffs' defamation claim and is thus coextensive with that claim. Therefore, it would be subject to dismissal under the anti-SLAPP statute for the reasons discussed in Section III(B)(5) regarding "actual malice." *Cf. Double Diamond Distrib.*, 2024 WL 1051951, at **6-7 (denying motion to dismiss defamation and trade libel claims). Accordingly, the Court **recommends** that leave to amend to allege Claim Two (trade libel) be **denied**.

**D.    Anti-SLAPP Step Two and Tortious Interference with Contract (Claim Three) and Tortious Interference with Prospective Advantage (Claim Four)**

In support of Claim Three (tortious interference with contract), Plaintiffs allege that: (1) they "had contracts and agreements with donors and sponsors in which said persons had agreed to donate and support Plaintiffs' activities"; (2) "Defendant knew or reasonably should have known of these contracts and agreements"; (3) "Defendant, by words or conduct, or both, intentionally caused donors and sponsors not to perform and/or terminate their agreements, promises and contracts with Plaintiffs"; (4) "Defendant's interference with the contracts and agreements was achieved . . . by defaming Plaintiffs in their professional capacity and integrity"; and (5) "Defendant's interference with said

contracts caused the Plaintiffs [sic] damages and losses." *Proposed Am. Compl.* [#35-2], ¶¶ 90-94.

In support of Claim Four (tortious interference with prospective advantage), Plaintiffs allege that: (1) they "had a track record of donations, contributions and support and a reasonable expectation that such contracts and agreements with donors and sponsors would continue and result in prospective advantage"; (2) "Defendant, by words or conduct, or both, intentionally caused donors and sponsors not to associate with Plaintiffs and to abjure entering into agreements, sponsorships and actions in support of Plaintiffs and their work"; (3) "Defendant's interference with the contracts and agreements was achieved . . . by defaming Plaintiffs in their professional capacity and integrity"; and (4) "Defendant's interference caused the Plaintiffs loss of prospective advantages." *Proposed Am. Compl.* [#35-2], ¶¶ 96-99.

Under Colorado law, the tort of intentional interference with contractual relations occurs "when one intentionally and improperly interferes with the performance of a contract between another person and a third person by inducing or otherwise causing the third person not to perform the contract." *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 721 (Colo. App. 2002) (citing *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112 (Colo. 1990)). "Generally, tortious interference with contractual relations must involve a wrongful act or a legal act performed in an unlawful manner." *Id.* (citing *Int'l Ass'n of Machinists v. Southard*, 459 P.2d 570 (Colo. 1969)). "One who intentionally and improperly interferes with the performance of a contract . . . is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." RESTATEMENT (SECOND) OF TORTS § 766 (1979).

In contrast, tortious interference with prospective business or economic advantage need not involve an underlying contract; instead, a plaintiff must show that a defendant, through improper and intentional interference, prevented the formation of a contract between the plaintiff and a third party. *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo. App. 1984). The prospective contract cannot be speculative—there must be "a reasonable likelihood or probability that a contract would have resulted[.]" *Klein v. Gryberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). "One who intentionally and improperly interferes with another's prospective contractual relation contract . . . is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." RESTATEMENT (SECOND) OF TORTS § 766B (1979).

Both torts share a common element that the defendant acted "intentionally and improperly" to interfere. Under § 767, the following factors bear on whether intentional interference was improper or not: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. RESTATEMENT (SECOND) OF TORTS § 767 (quoted in *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995)).

At the outset, for reasons previously discussed, the Court does not find that any of Defendant's potentially defamatory statements are actionable, either under a defamation

theory or under any other tort theory, no matter how it is pleaded. *See, e.g.*, *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Invs. Servs., Inc.*, 175 F.3d 848, 857 (10th Cir. 1999) (rejecting school district's argument that "a decision to engage in protected speech at a particular time constitutes conduct that may be regulated by means of state tort actions for interference with contract or business relations"); *X Corp. v. Ctr. For Countering Digital Hate, Inc.*, 2024 WL 1246318, at *9 (reasoning that a plaintiff cannot avoid an anti-SLAPP statute's application through an "artifice of pleading"). Plaintiffs have not satisfied the Court that they have a reasonable likelihood of satisfying the actual malice requirement as to the Remaining Statements identified in Section III(B)(2), above, and, therefore, those statements, which constitute protected speech, cannot form the basis of *any* of Plaintiffs' claims. However, Defendant's threats of litigation are a different matter. Because the Court found that all Defendant's alleged conduct fell within the scope of the anti-SLAPP provision, *see* Section III(A), above, the Court must examine whether Plaintiffs have established a reasonable likelihood of success on these tortious interference claims, to the extent they arise from Defendant's threats of litigation against donors. *L.S.S.*, 523 P.3d at 1287.

### 1.    Plaintiffs' Allegations and Evidence

Plaintiffs have substantiated their allegations of tortious interference with contract and tortious interference with prospective advantage through factual allegations in the Proposed Amended Complaint [#35-2], *see*, *e.g.*, ¶¶ 58-78 (describing diminished donations to Plaintiff Muckrakers and Plaintiff Wheeler's reduced salary) and exhibits they attached to their original complaint [#1]. They have shown that Defendant repeatedly threatened to go after Plaintiffs' donors. *Pl.'s Ex. J4 – Richardson Article* [#6], at 5

("Muckrakers' sloppy, reckless, and wildly irresponsible actions have created substantial legal liability for Muckrakers, David Wheeler in his personal capacity, and each donor to the organization who chose to fund the effort knowing it would result in defamation[.]"); *see also Pl.'s Ex. J6 – Keene Article* [#6], at 1 ("'This will be a costly miscalculation for Muckrakers, Wheeler, *and Muckrakers' donors*,' [Defendant's] attorney added.") (emphasis added). They have alleged, on information and belief, that Defendant never actually filed suit against any donors. *Proposed Am. Compl.* [#35-2], ¶ 75. Plaintiff Wheeler declared, in a sworn affidavit [#32-1], that shortly after Defendant broadcasted her intent to sue donors through various media appearances, "donors emailed to cancel their donations to Plaintiffs, some citing fear of their liability." *Aff. of Pl. Wheeler* [#32-1], ¶ 48. Plaintiff Wheeler also declared that in his decades of experience in politics, he had never seen donors threatened with legal action for supporting a cause with their donations. *Id.*, ¶ 49. Plaintiffs identified at least four donors by name who canceled donations[14] after Defendant's threats. *Proposed Am. Compl.* [#35-2], ¶ 74. Plaintiffs have also quantified the losses that resulted from their drop in donations. *Id.*, ¶¶ 58-59, 69-77; *Aff. of Pl. Wheeler* [#32-1], ¶¶ 42-47. They have alleged that after Defendant's comments, they saw a 92% drop in donations. *Aff. of Pl. Wheeler* [#32-1], ¶ 47. While Plaintiff Wheeler's affidavit provides information about diminished donations and the Proposed

---

[14] Plaintiff American Muckrakers PAC, Inc., has not described the form or nature of its arrangements with donors or sponsors in any detail; therefore, the Court cannot determine whether the alleged cancellation of donations or sponsorships involved existing contracts (which would implicate tortious interference with contract) or non-renewal of upcoming subscriptions or payments (which would implicate tortious interference with prospective relations). Regardless, by identifying four individual donors by name, Plaintiffs have pleaded a non-speculative protected relationship to survive dismissal. *Cf. Klein*, 44 F.3d at 1506 (noting that "a protected relationship" must be more than speculative).

Amended Complaint [#35-2] identifies donors who canceled donations, neither the affidavit nor the Proposed Amended Complaint [#35-2] contain any information about the sponsors who allegedly chose "not to perform and/or terminate their agreements, promises and contracts with Plaintiffs" and chose "not to associate with Plaintiffs and to abjure entering into agreements, sponsorships and actions in support of Plaintiffs and their work." *Proposed Am. Compl.* [#35-2], ¶¶ 92, 97.

### 2. Improper Interference

The Court considers the Restatement (Second) factors and finds that Plaintiffs have sufficiently pleaded and proffered sufficient evidence to sustain a claim that Defendant's threats of litigation against donors and sponsors constituted improper interference with existing contracts (with then-current donors and sponsors) and prospective business relations (with new donors and sponsors), under Rule 12(b)(6) as well as Colorado's anti-SLAPP statute.

Here, the nature of Defendant's alleged conduct (the Restatement's first factor) suggests ill will—she did not limit her threats to Plaintiffs but specifically targeted their donors and sponsors as well, which Plaintiff Wheeler asserts is "without precedent in [his] 40 years in politics[.]" Restatement (Second) § 767(a); *Pl.'s Ex. J6 – Keene Article* [#6], at 1 ("'This will be a costly miscalculation for Muckrakers, Wheeler, *and Muckrakers' donors*,' [Defendant's] attorney added.") (emphasis added); *Aff. of Pl. Wheeler* [#32-1], ¶ 49. The Court agrees—no legitimate basis for Defendant to sue Plaintiffs' donors appears to exist.

The evidence suggests that Defendant's motive (the Restatement's second factor) in making litigation threats against donors and sponsors, rather than limiting the threats

to Plaintiffs themselves, was to chill Plaintiffs' speech by driving their donors and sponsors away. Restatement (Second) § 767(b); *Pl.'s Ex. J6 – Keene Article* [#6], at 1. The fact that Defendant did not follow through with litigation also suggests that these threats were not made in good faith but with ill will. In this context, "good faith" means "a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication." *See Bassi v. Bassi*, ___ Cal. Rptr.3d ____, 2024 WL 2074835, at *7 (Cal. Ct. App. Apr. 15, 2024). Defendant's lack of follow through also undermines any suggestion that these threats are protected conduct under Colorado's anti-SLAPP statute. *See id.* (stating, "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration.") (quotation marks and citation omitted); *Begley v. Ireson*, 399 P.3d 777, 782 (Colo. App. 2017). While "communications preparatory to or in anticipation of bringing [a lawsuit]" often fall within anti-SLAPP statute protections, not every "threat to sue automatically merits anti-SLAPP protection"; rather, "*prelitigation* statements or conduct must bear some connection with a preexisting dispute to merit protection." *Mendoza v. Gramse*, No. D078307, 2022 WL 482566, at *6 (Cal. Ct. App. Feb. 17, 2022) (emphasis in original) (noting that California's anti-SLAPP statute "requires a statement to bear a 'connection with an issue under consideration or review' to merit statutory protection"); *see also Bassi* 2024 WL 2074835, at *7 (noting that anti-SLAPP protection does not extend to "statements 'having any connection, however remote, with an official proceeding.'").

      In *Mendoza*, the California Court of Appeals considered a tenant's threats to sue his landlord within the context of the landlord's crossclaims against the tenant for elder abuse and financial elder abuse, intentional infliction of emotional distress, and breach of

contract. 2022 WL 482566, at *1. The tenant filed an anti-SLAPP special motion to strike the crossclaims on grounds that his "threats to sue [the landlord] constituted protected prelitigation communications[.]" *Id*. at *2. Critically, the appellate court deemed these litigation threats, *i.e.*, threats to take the landlord's property and sue her for all she was worth, unprotected activity in light of evidence that the tenant "did not make his threat to sue in good faith or seriously contemplating litigation." *Id*. at *7.

Like California's statute, Colorado's anti-SLAPP statute requires a statement to bear "in connection with an issue under consideration or review." Colo. Rev. Stat. § 13-20-1101(2)(a)(III). Therefore, the Court finds the California Court of Appeals' reasoning in *Mendoza* persuasive and, thus, similarly concludes that Defendant's threats to sue Plaintiffs' sponsors and donors are unprotected because they were neither made in good faith nor in serious contemplation of litigation. *See Begley*, 399 P.3d at 781 (Colo. App. 2017) (holding that the litigation privilege may "apply to an attorney's prelitigation statement" if the statement is "related to prospective litigation" and "the litigation [is] . . . contemplated in good faith."). Here, the policy interest in free access to the courts "is outweighed by the intentional and improper interference with contract by means of litigation not brought in good faith." *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1117 (Colo. 1990).

The Restatement's third, fourth, and fifth factors "require[ ] a balancing of the parties' conflicting interests to determine whether the interference was warranted under the particular circumstances[.]" *Steinbach v. Dillon Cos., Inc.*, 253 F.3d 538, 540-41 (10th Cir. 2001); *see also* Restatement (Second) of Torts § 767(c)-(e) (the interests the actor's conduct interferes with, the interests the actor sought to advance through the

conduct, and the social interests in protecting the freedom of the actor's action and the other's contractual interests). Here, both Plaintiffs (and their donors/sponsors) and Defendant were engaged in First Amendment activity, so their interests are neutral. Restatement (Second) § 767(c)-(d). The social interests weigh in favor of Plaintiffs' contractual interests because Plaintiffs rely on donations to perform their work reporting on matters of public interest (and their donors/sponsors express themselves through monetary contributions), while Defendant enjoys a large platform by virtue of her elected office. Restatement (Second) § 767(e).

While Defendant has an interest in protecting her reputation, even through litigation, Plaintiffs' donors and sponsors have a weightier interest in exercising their First Amendment right to engage in political speech (in the form of financial donations to political action committees) without fear of retaliation. *See, e.g.*, *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092-93 (10th Cir. 2013) ("[S]peech comes in many forms, and the Supreme Court in *Buckley* [*v. Valeo*, 424 U.S. 1 (1976)] recognized that the financing and spending necessary to enable political speech receives substantial constitutional protection."). The Court finds no social value in allowing elected officials to silence speech they dislike by threatening gadfly journalists' donors, who have not themselves engaged in any unlawful or tortious activity.

Turning to the Restatement's sixth factor, the close temporal proximity between Defendants' comments and the diminished donations, including from donors who cited the threat of litigation, demonstrates the proximity of Defendant's conduct to the interference. Restatement (Second) § 767(f); *Proposed Am. Compl.* [#35-2], ¶ 74.

Finally, while the parties have no contractual or commercially competitive relationship, the Court finds that the Restatement's seventh factor (the relations between the parties) weighs toward a finding of impropriety because Defendant is an elected official with a large platform and access to multiple media platforms, while Plaintiffs' speech concerning matters of public interest and Defendant, a public official, relies upon donors' and sponsors' support. Restatement (Second) § 767(g). Overall, the Court finds that Plaintiffs have demonstrated a reasonable likelihood of proving that Defendant's threats of litigation against donors/sponsors (as opposed to her allegedly defamatory comments about Plaintiffs and her threats of litigation against Plaintiffs) were improper. In making this finding, the Court emphasizes that the "determination that [Plaintiffs have] demonstrated a reasonable likelihood of success is in no way an opinion that [they] will actually prevail." *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 252 (Colo. App. 2022).

### 4.    Conclusion

Having found a reasonable probability exists that Defendant's threats of litigation against donors were intentional and improper and not shielded by the litigation privilege, the Court finds that Plaintiffs have demonstrated a reasonable probability of prevailing on the merits of both tortious interference claims, to the extent they are premised on Defendant's litigation threats against Plaintiffs' donors. A reasonable probability exists that Defendant intentionally and improperly interfered with the performance of agreements between Plaintiffs and existing donors, causing a number of donors to cancel contracts or arrangements. *See* Restatement (Second) § 766. A reasonable probability also exists that Defendant intentionally and improperly interfered with Plaintiffs' prospective contractual relations with current or potential donors, by "inducing or

otherwise causing [donors] not to enter into or continue the prospective relation" with Plaintiff. *See* Restatement (Second) § 766B.

Accordingly, the Court finds that Plaintiffs have satisfied step two of the anti-SLAPP analysis as to Claims Three and Four: they have gone beyond the pleading and presented evidence that satisfies the Court that they are reasonably likely to prevail on the merits of their tortious interference claims. *Coomer I*, 659 F. Supp. 3d at 1200 (D. Colo. 2023); *L.S.S.*, 523 P.3d at 1287. Accordingly, the Court **recommends** that the Motion to Amend [#35] be **granted** as to Claim Three (tortious interference with contract) and Claim Four (tortious interference with prospective advantage).

## E.   Anti-SLAPP Step Two and Abuse of Process (Claim Six)

To state an actionable abuse of process claim, a plaintiff must allege (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings; and (3) resulting damage. *Active Release Techs., LLC v. Xtomic, LLC*, 413 P.3d 210, 212 (Colo. App. 2017) (citation omitted).

An abuse of process claim does not require proof of malice, because it is "specifically designed to address misuse of and access to courts, not malicious intent." *Id.*, at 213 (citing *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007); *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010); *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1268 (Alaska 2016). "The required motive in an abuse of process claim is to put pressure on the person who is wrongfully sued to perform or to refrain from performing an action unrelated to the process." *Active Release Techs.*, 413 P.3d at 213 (quoting *Cornelison*, 376 P.3d at 1268).

Regarding the first element, a purpose is "ulterior" if it seeks to accomplish something that the legal proceeding was not designed to accomplish. *Mintz*, 284 P.3d at 66. However, no liability exists for abuse of process "if the defendant's ulterior purpose [is] simply incidental to the proceeding's proper purpose." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 682 cmt. b).

Regarding the second element, use of the legal proceeding in an "improper manner" requires the plaintiff to demonstrate "a willful act by the defendant in using the process that is not proper in the proceeding's regular course." *Id.* (citing *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 170 (Colo. App. 2003)). An example of improper use may include "accomplishing a coercive goal that is not the intended legal purpose of the process." *King*, 97 P.3d at 170 (generally citing *Aztec Sound Corp. v. W. States Leasing Co.*, 510 P.2d 897 (Colo. App. 1973)). However, the filing of a justified lawsuit cannot constitute the improper act, even if the suit was filed for an improper purpose. *Mintz*, 284 P.3d at 66.

Finally, as for the third element, "a defendant is only liable for abuse of process if his or her abuse caused damages to the plaintiff." *Id.* (citing *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006)).

Here, Plaintiffs have demonstrated a reasonable probability of success on the first element of abuse of process: an ulterior purpose. Plaintiffs allege that Defendant instituted proceedings for a temporary restraining order with two ulterior purposes: "preventing Plaintiffs from reporting on her for a critical period of time right before the election" and embarrassing Plaintiff Wheeler in the eyes of "donors who were concerned about the behavior that Defendant alleged against him" which might cause them to

distance themselves, as Col. Morris Davis allegedly did by resigning from American Muckrakers' board. *Proposed Am. Compl.* [#35-2] at 21-22. In his affidavit, Plaintiff Wheeler declares that Defendant "never served" the Civil Protection Order she received against him, and that Order contained "false information accusing [him]" of conduct he did not engage in. *Aff. of Pl. Wheeler* [#32-1], ¶¶ 12, 13. At this stage, the Court is satisfied that there is a reasonable probability that Defendant's motive in bringing, and then later dropping, the temporary restraining order proceeding against Plaintiff Wheeler was "to put pressure on [Plaintiffs] to perform or to refrain from performing an action unrelated to the process," i.e., to pressure Plaintiffs to refrain from reporting on her during election season. *Cornelison*, 376 P.3d at 1268.

However, the Court finds that Plaintiffs' allegations fail to demonstrate a reasonable likelihood of prevailing on the second element, improper use of the proceeding. Plaintiffs allege that Defendant Boebert improperly delayed the temporary restraining order proceeding to obtain the desired deterrent effect on Plaintiffs, and then abandoned the proceeding when it came time to present evidence. *Id.* at 21. Plaintiffs allege that Defendant did attend the scheduled hearing on the temporary restraining order, and that they were deterred from reporting on Defendant "under threat of punishment for contempt of court." *Id.* Finally, Plaintiffs allege that Plaintiff Wheeler "suffered the embarrassment of having a temporary restraining order issued against him." *Id.* Defendant disputes Plaintiffs' characterizations, arguing that Defendant in fact had counsel present at the scheduled hearing. *Response* [#37] at 5-6. She disputes that the proceeding was "dropped" because the court in fact issued a temporary civil protection

order on June 23, 2022, but the Garfield County Sheriff's Office was unable to serve Mr. Wheeler. *Id.* at 6-7; *Temporary Protection Order* [#37-2].

This claim would fail even under Rule 12(b)(6) because Plaintiffs failed to plausibly allege that Defendant engaged in any specific "willful action in the use of that process which is not proper in the regular course of the proceedings." *Active Release Techs., LLC*, 413 P.3d at 212. Delays occur in litigation, and the causes of those delays range from innocent to improper. Here, Plaintiffs fail to substantiate their assertion that Defendant "delayed the proceeding intentionally" with any specific factual allegations. *Proposed Am. Compl.* [#35-2], at 21. They do not set forth a timeline or point the Court to any frivolous filings or dilatory motions. Plaintiffs allege that they faced the "threat of punishment for contempt of court" troubling, but the Proposed Amended Complaint [#35-2] does not detail the basis for that threat, so the Court cannot connect it to any alleged conduct by Defendant.  *Proposed Am. Compl.* [#35-2] at 21. As for the "embarrassment of having a temporary restraining order issued against him," this allegation cannot support a claim of abuse of process: although entry of a temporary restraining order is a "coercive goal," it was "the intended legal purpose of the process" Defendant initiated. *King*, 97 P.3d at 170 (citing *Aztec Sound Corp.*, 510 P.2d at 897). This suggests that the proceeding against Plaintiff Wheeler was justified.

In short, Plaintiffs' abuse-of-process allegations "are so general that they encompass a wide swath of conduct, much of it innocent" and, as a result, they "have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008); *Twombly*, 550 U.S. at 570. To the extent that the Court considers matters beyond the Complaint under step-two of the anti-SLAPP

analysis, such as the Garfield County Court's Citation and Temporary Civil Protection Order [#37-2], those materials do not demonstrate improper use of process. *Compare Temporary Protection Order* [#37-1] (dated June 23, 2022), *with Pl.'s Ex. C1 – Am. Muck Press Release* [#6] (dated June 14, 2022). The Garfield County Court's issuance of Defendant's requested protection order negates any notion of improper use of process. The Court finds that Plaintiffs have not established a reasonable likelihood of success on the merits of their abuse of process claim.

Because Plaintiffs have failed to plausibly allege the second element of abuse of process, i.e. improper use, the Court **recommends** that they be **denied** leave to amend to allege abuse of process on the basis of futility.

## F.     Civil Conspiracy (Claim Five)

Under Colorado law, an actionable civil conspiracy claim requires: "(1) two or more persons . . .; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Rosenblum v. Budd*, 538 P.3d 354, 367 (Colo. App. 2023) (citation omitted). In civil actions, conspiracy is a derivative cause of action that is not independently actionable: "[i]f the acts alleged to constitute the underlying wrong provide no cause of action, then no cause of action arises for the conspiracy alone." *Colo. Cmty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. App. 2013) (citation omitted). Here, because the Court finds that the defamation and abuse of process claims fail, Defendant's alleged tortious interference premised on threats of litigation against donors/sponsors is the only "underlying wrong" that could support Plaintiffs' civil conspiracy claim.

To the extent that Plaintiffs' civil conspiracy claim rests on the alleged tortious interference, they "must show an agreement as to that objective or the course of action to achieve it." *Coomer v. Donald J. Trump for President, Inc.*, ___ P.3d ____, 2024 COA 35, ¶ 208 (Colo. App. Apr. 11, 2024). Plaintiffs "need not show a single collective agreement among all defendants, but he must show a meeting of the minds between [the] defendant and at least one other person." *Id.* (emphasis omitted). Such a conspiracy may be implied by a course of conduct and other circumstantial evidence, but the Court will not "infer the agreement"—Plaintiff must "present 'evidence of such an agreement,' whether direct or circumstantial." *Id.*, ¶ 209 (internal quotations and citation omitted).

In *Coomer v. Donald J. Trump for President*, the Colorado Court of Appeals held that the lower court should have dismissed the plaintiff's claim of civil conspiracy to commit defamation because the claim was "premised almost entirely on [one defendant] having served as the other defendants' source of information and coordinating with them to present his account on their shows." *Id.*, ¶¶ 210, 214. The court "[could not] conclude that such ordinary sharing of information and coordination between the media and their sources gives rise to a conspiracy." *Id.*, ¶ 210 (citing *Dowd v. Calabrese*, 589 F. Supp. 1206, 1213-14 (D.D.C. 1984) (noting chilling effect and detriment to First Amendment values if conspiracy claims based on ordinary information sharing between reporters and their information sources were permitted).

The Court finds the same outcome is required here. Plaintiffs' Claim Five does not name a single alleged co-conspirator of Defendant. *Proposed Am. Compl.* [#35-2], at 20 (civil conspiracy claim "against [Defendant] and in concert with John Does 1-25 to be named after discovery"). At best, they identify a "Hannity" producer named Dante Mazza

who asked Plaintiff Wheeler questions but did not have Plaintiff Wheeler on the show, along with an allegation in Plaintiff Wheeler's affidavit that "Defendant was able to privately coordinate with several large media organizations to publish her statements without any opportunity for me to tell my side of the story," which he supports by citing to email conversations with producers, including Mazza. *Proposed Am. Compl.* [#35-2], ¶¶ 38-40; *Aff. of Pl. Wheeler* [#32-1], ¶ 41. Plaintiff Wheeler seems to assert that a conspiracy existed because media outlets did not "allow Plaintiffs to respond to the defamation against them (despite repeated requests by Plaintiffs and counsel merely to be able to speak on their platform and to correct the accusations against them)." *Aff. of Pl. Wheeler* [#32-1], ¶ 50. However, these media staffers are not named defendants.

Nevertheless, even as to those media staffers, Plaintiffs failed to allege a meeting of the minds or anything beyond the "ordinary sharing of information and coordination between the media and their sources," in this case a sitting congressperson. *Coomer v. Donald J. Trump for President*, 2024 COA 35, ¶ 210. The Court has reviewed Plaintiff's Exhibits I1-I5, which include an email from "Hannity" producer Mazza asking Plaintiff Wheeler for his side of the story, along with several (apparently ignored) requests by Plaintiff Wheeler to also appear on "Hannity" to rebut Boebert's accusations. *See generally Pl.'s Ex. I1 – Fox News Comment Request* [#6]; *Pl.'s Ex. I2 – Wheeler Email to Mazza, Hannity* [#6]; *Pl.'s Ex. I3 – Wheeler Email to Producers* [#6]; *Pl.'s Ex. I4 – Second Wheeler Email to Mazza* [#6]; *Pl.'s Ex. I5 – First Wheeler Email to Mazza* [#6]. These emails do not demonstrate a meeting of the minds between Defendant and those media figures, not least because Defendant was not part of these conversations. The producers and media figures barely even responded to Plaintiff Wheeler. To plausibly state a claim

for civil conspiracy, Plaintiff had to allege something more than FOX producers' editorial decision not to invite him onto "Hannity"; these emails provide no indication that Defendant had any input over those decisions. These allegations "are so general that they encompass a wide swath of content, much of it innocent." *Robbins*, 519 F.3d at 1247. They do not plausibly allege a civil conspiracy to tortiously interfere with Plaintiffs' contracts or prospective business relationships.

Claim Five is subject to dismissal under Rule 12(b)(6) for failure to state a claim. It is also subject to dismissal under the anti-SLAPP statute because Plaintiffs have presented no evidence, either direct or circumstantial, that there was "a meeting of the minds on an object to be achieved . . . or a course of action to achieve the object." *Rosenblum*, 538 P.3d at 367-68. Even if Defendant had planned to use her appearance on radio and television shows and planned to issue statements in furtherance of her goal of tortiously interfering with Plaintiffs' relationship with current and prospective donors, Plaintiffs have shown no evidence of any agreement—they have not even identified the individuals with whom Defendant supposedly conspired.

Because Plaintiffs have failed to plausibly allege the existence of a civil conspiracy, the Court **recommends** that they be **denied** leave to amend to allege civil conspiracy based on futility.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion to Amend [#35] be **GRANTED IN PART**, as to the Proposed Amended Complaint's [#35-2] Claim Three (tortious interference with contract) and Claim Four (tortious interference with prospective

advantage), and **DENIED IN PART**, as to the Proposed Amended Complaint's [#35-2] Claim One (defamation), Claim Two (trade libel), Claim Five (civil conspiracy), and Claim Six (abuse of process).

IT IS FURTHER **RECOMMENDED** that Plaintiff be ordered to file a clean copy of an Amended Complaint which alleges Claim Three (tortious interference with contract) and Claim Four (tortious interference with prospective advantage).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waive de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v, Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.1996).

Dated: June 9, 2024                          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge